BOWEN *v.* UNITED STATES

No. 73-6848. Argued February 18, 1975—Decided June 30, 1975

*Michael D. Nasatir,* by appointment of the Court, 419 U. S. 1017, argued the cause for petitioner. With him on the briefs was *Jerald W. Newton.*

*Mark L. Evans* argued the cause for the United States. With him on the brief were *Solicitor General Bork, Acting Assistant Attorney General Keeney,* and *Sidney M. Glazer.**

---

*Briefs of *amici curiae* urging reversal were filed by *Sanford Jay Rosen* for the Mexican American Legal Defense and Educational Fund, and by *Arthur Wells, Jr.,* for Gilbert Bryant Foerster.

Mr. Justice Powell delivered the opinion of the Court.

Petitioner was convicted of federal drug offenses based on evidence seized in January 1971 when Border Patrol officers stopped his camper pickup at a traffic checkpoint on California Highway 86, about 36 air miles from the Mexican border. The officers first determined that petitioner was a United States citizen, then asked him to open the camper so that they could search for concealed aliens. When petitioner opened the door, one officer noticed a strong odor of marihuana. He entered the camper and discovered approximately 356 pounds of the drug. A subsequent search of the passenger compartment produced a number of benzedrine tablets.

The Court of Appeals for the Ninth Circuit affirmed petitioner's conviction, rejecting his argument that the search was unlawful. 462 F. 2d 347 (1972). A petition for certiorari was pending when we announced our decision in *Almeida-Sanchez* v. *United States,* 413 U. S. 266 (1973), holding that the Fourth Amendment prohibits the use of roving patrols to search vehicles, with neither a warrant nor probable cause, at points removed from the border and its functional equivalents. We vacated the judgment in petitioner's case and remanded for reconsideration in light of *Almeida-Sanchez.* 413 U. S. 915 (1973).

The Court of Appeals reheard the case en banc and held, in a sharply divided opinion, that the principles of *Almeida-Sanchez* applied to searches conducted at traffic checkpoints as well as searches conducted by roving patrols. The Court nevertheless affirmed petitioner's conviction, holding that *Almeida-Sanchez* would not be applied to invalidate searches that occurred prior to the date of that decision. 500 F. 2d 960 (1974). We

granted certiorari to resolve an apparent conflict with the Court of Appeals for the Tenth Circuit in *United States* v. *King,* 485 F. 2d 353 (1973), and *United States* v. *Maddox,* 485 F. 2d 361 (1973).

We hold today in *United States* v. *Ortiz, ante,* p. 891, that the Fourth Amendment, as interpreted in *Almeida-Sanchez,* forbids searching cars at traffic checkpoints in the absence of consent or probable cause. In this case the Government does not contend that the Highway 86 checkpoint is a functional equivalent of the border, that the officers had probable cause to open the camper, or that petitioner consented to the search. The primary question for decision is whether the principles of *Almeida-Sanchez* should have been applied retroactively.

In *United States* v. *Peltier, ante,* p. 531, we refused to apply *Almeida-Sanchez* to a roving-patrol search conducted before June 21, 1973, even though a direct appeal was pending on that date. We think the decision in *Peltier* is controlling here, as the reasons that dictated a holding of nonretroactivity in that case are equally applicable. At the time of our decision in *Almeida-Sanchez,* all the Courts of Appeals in Circuits adjacent to the Mexican border had held that immigration officers at traffic checkpoints could search automobiles for concealed aliens. *E. g., United States* v. *McCormick,* 468 F. 2d 68 (CA10 1972); *United States* v. *De Leon,* 462 F. 2d 170 (CA5 1972); *Fumagalli* v. *United States,* 429 F. 2d 1011 (CA9 1970).[1] This Court had

---

[1] While approving checkpoint searches for aliens, the Court of Appeals for the Ninth Circuit had limited the Border Patrol's authority to search for *contraband* at points away from the border. *E. g., Cervantes* v. *United States,* 263 F. 2d 800 (1959); see *Fumagalli* v. *United States,* 429 F. 2d 1011 (1970). The search of petitioner's camper was not invalid under these cases because the agent was engaged in a search for aliens, legal under the Ninth

not ruled on the question, and no contrary precedent was reported in other Courts of Appeals. The Border Patrol reasonably relied on the decisions of the Court of Appeals in performing the search in this case and others like it, and in these circumstances the purposes of the Fourth Amendment exclusionary rule would not be served by applying the principles of *Almeida-Sanchez* retroactively.

Petitioner further argues that even if *Almeida-Sanchez*

---

Circuit's decisions, when he developed probable cause to believe that the camper contained marihuana.

There was some ground for confusion about the state of the law in the Fifth Circuit at the time *Almeida-Sanchez* was decided. Early cases had affirmed immigration officers' authority to search for aliens at traffic checkpoints. *E. g., Ramirez* v. *United States,* 263 F. 2d 385 (1959); *Kelly* v. *United States,* 197 F. 2d 162 (1952). Later cases took the same view, *e. g., United States* v. *De Leon,* 462 F. 2d 170 (1972), although one opinion seemed to hold that the authority to search at checkpoints was qualified by a requirement that the location and operation of the checkpoint be reasonable. *United States* v. *McDaniel,* 463 F. 2d 129, 133 (1972). Two decisions by other panels of the court ambiguously suggested that a search at a checkpoint must be supported by "reasonable suspicion." *United States* v. *Wright,* 476 F. 2d 1027 (1973); *United States* v. *Maggard,* 451 F. 2d 502 (1971). But a later opinion seemed to adopt the Ninth Circuit's distinction between searches for aliens and searches for contraband, suggesting that immigration searches could be made without suspicion while customs searches required a foundation for believing that the particular car contained contraband. *United States* v. *Thompson,* 475 F. 2d 1359, 1362 (1973).

Neither of the cases suggesting that "reasonable suspicion" was required for immigration searches resulted in a decision invalidating a search, and none of the court's opinions indicated disagreement with the earlier cases establishing an unqualified right to search for aliens at checkpoints whose location and operation were reasonable. Under these circumstances, we conclude that the Government reasonably relied on the earlier cases in continuing to make immigration searches at checkpoints.

is not to be applied retroactively he is entitled to the benefit of the Court of Appeals' decision that *Almeida-Sanchez* extended to checkpoint searches. He invokes this Court's practice of applying new constitutional doctrine in the case that establishes the point,[2] and maintains that the Court of Appeals' refusal to apply its extension of *Almeida-Sanchez* in his case made its discussion of that point mere dictum. We conclude, however, that the only error of the Court of Appeals was its reaching out to decide that *Almeida-Sanchez* applied to checkpoint searches in a case that did not require decision of the issue.

The Government raised two questions in the Court of Appeals: whether *Almeida-Sanchez* applied retroactively, and if it did, whether it would require probable cause for checkpoint searches. This Court consistently has declined to address unsettled questions regarding the scope of decisions establishing new constitutional doctrine in cases in which it holds those decisions nonretroactive. *E. g., Michigan* v. *Payne,* 412 U. S. 47, 49–50 (1973); *DeStefano* v. *Woods,* 392 U. S. 631 (1968). This practice is rooted in our reluctance to decide constitutional questions unnecessarily. See *United States* v. *Raines,* 362 U. S. 17, 21 (1960); *Ashwander* v. *TVA,* 297 U. S. 288, 346–347 (1936) (Brandeis, J., concurring). Because this reluctance in turn is grounded in the constitutional role of the federal courts, *United States* v. *Raines, supra,* the district courts and courts of appeals should follow our practice, when issues of both retroactivity and application of constitutional doctrine are raised, of deciding the retroactivity issue first. As the

---

[2] See *Stovall* v. *Denno,* 388 U. S. 293, 301 (1967); compare *Duncan* v. *Louisiana,* 391 U. S. 145 (1968), with *DeStefano* v. *Woods,* 392 U. S. 631 (1968); compare *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), with *Michigan* v. *Payne,* 412 U. S. 47 (1973).

Court of Appeals correctly decided in this case that *Almeida-Sanchez* did not apply to a 1971 search, it should have refrained from considering whether our decision in that case applied to searches at checkpoints.

Petitioner contends, nevertheless, that once the Court of Appeals addressed the unnecessary issue it was bound to apply that ruling in his case. Because it refused to do so, petitioner says the court rendered a hypothetical decision forbidden by Art. III of the Constitution. It is true that this Court has suggested that Art. III is the primary impetus for applying new constitutional doctrines in cases that establish them for the first time. *Stovall* v. *Denno,* 388 U. S. 293, 301 (1967). But petitioner's case is altogether different. *Almeida-Sanchez* already had established the principle, and there was a genuine controversy between petitioner and the United States over its retroactive application. Contrary to petitioner's assertion, the court's jurisdiction to resolve that controversy could not be dislodged by its discussion of an unnecessary issue.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS dissents for the reasons stated in his dissent in *United States* v. *Peltier, ante,* p. 543.

MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL dissent and would reverse substantially for the reasons expressed in MR. JUSTICE BRENNAN's dissent in *United States* v. *Peltier, ante,* p. 544.

Mr. JUSTICE STEWART dissents.