## MATTER OF RINA

### In Deportation Proceedings

### A-13197621

*Decided by Board September 12, 1975*

(1) Where respondent, travelling by automobile upon his return to the United States on November 15, 1969 after a trip to Canada, passed at least two signs giving directions to the nearest immigration inspection station, and it was not until respondent's car had passed the second sign and the last clear chance to proceed to the inspection station that the car was stopped by a Service Border Patrol Agent, the stop occurred at the "functional equivalent" of the border within the scope of *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973), and *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975).

(2) Since respondent's car was travelling slowly as if unsure of the area; there were several people in the car; the license plate did not bear the local county prefix; the road was infrequently travelled by cars other than those of people who lived there, and the car passed by the last clear point to proceed to the inspection station, the Border Patrol Agent had "reasonable suspicion" to believe that respondent's car might contain aliens illegally in this country within the ambit of *United States* v. *Brignoni-Ponce, supra*.

(3) The doctrine of collateral estoppel prevents respondent, who was convicted of entry without inspection under section 275 of the Immigration and Nationality Act, from relitigating the illegal entry in subsequent deportation proceedings. [*Matter of Rina*, 15 I. & N. Dec. 346 adhered to.].

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entry without inspection.

ON BEHALF OF RESPONDENT: Leonard L. Finkel, Esquire
515 Madison Avenue
New York, New York 10022

The respondent moves for reconsideration of our decision dated June 11, 1975, in which we dismissed his appeal from a decision by the immigration judge ordering his deportation to Italy on the charge contained in the order to show cause.[1] Oral argument and a stay of deportation have also been requested. The requests and the motion will be denied.

Initially, counsel contends that reconsideration is warranted in light of the Supreme Court's decisions in *Almeida-Sanchez* v. *United States*,

---

[1] That decision is *Matter of Rina*, Interim Decision No. 2396 (BIA 1975).

413 U.S. 266 (1973), and *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 95 S. Ct. 2574 (1975). Both of these cases were decided long after the vehicle stop at issue in the present case took place in 1969. The Supreme Court has ruled that *Almeida-Sanchez* does not have retroactive effect. *United States* v. *Peltier,* 422 U.S. 531, 95 S. Ct. 2313 (1975); *Bowen* v. *United States,* 422 U.S. 916, 95 S. Ct. 2569 (1975). We are satisfied that the same rationale would be applied to the decision in *United States* v. *Brignoni-Ponce,* supra. Moreover, the vehicle stop and interrogation in the present case were proper even under the standards set forth in *Almeida-Sanchez* and *Brignoni-Ponce.*

The record shows that on November 15, 1969, the respondent admittedly was returning to the United Staes from a trip to Canada. At about 7:30 p.m. that evening, after darkness had fallen, a Border Patrol Agent in the vicinity of Cook's Line, New York, was alerted to the presence of the respondent's car by the tripping of an electronic device posted on Cook's Line Road, a lightly traveled back road leading from the Canadian border (Tr. p. 85). The agent proceeded to Earlville Road, an adjoining road accessible from the border only by way of Cook's Line Road, and parked his car (Tr. pp. 85-86, 107-08). There were no other cars in sight (Tr. p. 86). As the respondent's car passed by, the agent noted that it was going slowly and that the driver was proceeding as if he was unsure of the area (Tr. p. 103). The agent pulled out behind the vehicle and noted that there were several people in the vehicle and that the license plate did not have the local county prefix (Tr. p. 88). The agent also testified that the road very infrequently was traveled by cars other than those of people who lived there (Tr. p. 88).

The respondent's car passed at least two signs giving directions to the nearest immigration inspection station (Tr. p. 105). It was not until the respondent's car had passed the second sign, and the last clear chance to proceed to the inspection station, that the car was stopped by the agent (Tr. p. 106). The agent indicated that he would not have made the stop had the respondent's vehicle proceeded to the inspection station (Tr. p. 106). He also indicated that an additional reason for waiting to stop the respondent's car was that he was outnumbered by the occupants of the car and that the Earlville Road would not have been a safe place to make a stop if there was any chance of a confrontation involving force (Tr. pp. 90, 106).

We believe that the foregoing facts would justify a finding that the stop occurred at the "functional equivalent" of the border within the scope of *Almeida-Sanchez.* In addition, although further justification would not be necessary at the "functional equivalent" of the border, the Border Patrol agent undoubtedly had a "reasonable suspicion" that the respondent's vehicle contained aliens who might be in the country illegally. See *United States* v. *Brignoni-Ponce,* supra. Even assuming,

then, that the standards set forth in *Almeida-Sanchez* and *Brignoni-Ponce* had retroactive application, we find that those standards have been met in the present case.

Secondly, counsel challenges our holding that the doctrine of collateral estoppel prevents the respondent, who was convicted of entry without inspection under section 275 of the Act, from relitigating the illegal entry issue in the present proceedings. In adhering to our previous decision, we have the following comments in response to counsel's arguments.

(1) Counsel is incorrect in asserting that the term "entry" under the Immigration and Nationality Act has a different meaning for deportation as opposed to criminal purposes. *Matter of Barragan-Garibay*, 15 I. & N. Dec. 77 (BIA 1974).

(2) Counsel's reliance upon *Matter of Martinez-Lopez*, 10 I. & N. Dec. 409 (BIA 1962; A.G. 1964), is misplaced. In that case, the Attorney General agreed with the Board that there was no true identity of issues. Therefore, the Board's inquiry into the materiality of the respondent's misrepresentation was not foreclosed by his conviction for conspiring to violate the provisions of 18 U.S.C. 1001.

(3) *North Carolina* v. *Alford*, 400 U.S. 25 (1970) cited by counsel, has no applicability to the present situation.

(4) Counsel's citation of Rule 803(22) of the Federal Rules of Evidence is inapposite.[2] The Federal Rules of Evidence did not take effect until July 1, 1975, long after the respondent's deportation hearing was completed. Those rules, of course, have no binding effect in administrative deportation proceedings. More importantly, however, the commentary by the Advisory Committee on Rules of Evidence, the body that originally formulated the rules, clearly states that Rule 803(22) "does not deal with the substantive effect of the judgment as a bar or collateral estoppel." Commerce Clearing House, Federal Rules of Evidence 122 (February 1975). We adopt this view.

Finally, we reiterate that we have made a thorough review of the entire record. We repeat our prior conclusion that, quite independently from any collateral estoppel effect of the judgment of conviction, on the

---

[2] Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(22) Judgment of previous conviction.—Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

record as a whole the respondent's deportability has been established by clear, convincing, and unequivocal evidence.

We adhere to our decision of June 11, 1975. The respondent's motion will be denied, and his requests for oral argument and a stay of deportation also will be denied.

**ORDER:** The motion to reconsider is denied, and the requests for oral argument and a stay of deportation also are denied.