UNITED STATES of America

v.

Enrique ALVAREZ–GONZALEZ.

Crim. No. 74–B–277.

United States District Court,
S. D. Texas,
Brownsville Division.

Aug. 14, 1975.

Edward B. McDonough, Jr., U. S. Atty., Houston, Tex., and Charles F. Sandoval, Asst. U. S. Atty., Brownsville, Tex., for the Government.

Nago Alaniz, San Diego, Tex., for defendant.

## MEMORANDUM AND ORDER

GARZA, Chief Judge.

The Defendant Enrique Alvarez-Gonzalez is charged by Grand Jury Indictment of possessing approximately 152

pounds of marihuana with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1). To this charge he entered a plea of not guilty, waived his right to a jury trial, and submitted his case to the Court alone on the basis of evidence received at the hearing on his Motion to Suppress the marihuana seized by the Border Patrol Agents during a search at the La Gloria checkpoint.

On January 10, 1975, the Court found the Defendant guilty as charged. At that time the Court informed the Defendant that the question of the legality of searches carried out at fixed Border Patrol checkpoints was presently pending before the United States Supreme Court and that this Court could sentence the Defendant as soon as the pre-sentence report was ready, or if the Defendant wished, could delay sentencing until after the Supreme Court ruled on the legality of fixed checkpoints. The Defendant announced that he preferred to wait until after the Supreme Court's ruling and stated that he would waive his right to be sentenced within 60 days from the date of his conviction as required by Rule 50(b), Federal Rules of Criminal Procedure.

On June 30, 1975, the United States Supreme Court handed down its decisions in a trilogy of checkpoint related cases: *Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641; *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623; and *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. Of these three cases, *Ortiz,* which deals with a search at a fixed checkpoint, is most relevant to the case at bar.

■ More than a year prior to these recent Supreme Court cases, this Court wrote its opinion in *United States v. Fuentes,* 379 F.Supp. 1145, (S.D.Tex., 1974), aff'd., 517 F.2d 1401, (C.A. 5, 1975) in which this Court carefully and at some length stated its reasons why a search based on probable cause gained during an immigration inspection at the La Gloria checkpoint was legal. It was this Court's two-step analysis that the

question of the legality of a warrantless search at a fixed Border Patrol checkpoint involved two issues: the propriety of the initial stop to determine citizenship and the propriety of the further search of the vehicle based on information and facts in plain view obtained during the initial stop. This Court held that the search in *Fuentes* was legal because the initial stop at the checkpoint was reasonable under the Fourth Amendment and that the ensuing search was legal because it was based on probable cause which developed during the initial inspection. In the alternative, this Court held that separate and apart from questions of probable cause, both the initial stop and the ensuing search were legal under this Court's second river theory. Briefly stated, the second river theory holds that considering the geographic location of the La Gloria checkpoint beyond the confluence of three roads which lead directly to the Rio Grande River and the variety of evasive techniques employed by illegal aliens to penetrate our interior the checkpoint serves the same function as international border and is the functional equivalent of that border.

■ In *Ortiz* the Supreme Court employed the same two-step analysis that this Court used in *Fuentes.* The focus of its attention, however, was clearly on the complete search of the vehicle, rather than on the initial stop which it termed as an inspection. The Supreme Court held that searches at traffic checkpoints away from the border and its functional equivalents may only be had upon a showing of consent or probable cause. *Ortiz,* at 896–897, 95 S.Ct. 2585. Although the Supreme Court did not pass on the legality of the initial stop for the purposes of questioning the occupants of the vehicle as to their citizenship, it did in several instances sharply distinguish between a stopping and questioning of persons as to their nationality on the one hand and the searching of the vehicle for aliens on the other:

"While the differences between a roving patrol and a checkpoint would be

significant in determining the propriety of the stock, which is considerably less intrusive than a search, [cite omitted] they do not appear to make any difference in the search itself. The greater regularity attending the stop does not mitigate the invasion of privacy that a search entails. Nor do checkpoint procedures significantly reduce the likelihood of embarrassment. Motorists whose cars are searched, unlike those who are only questioned, may not be reassured by seeing that the Border Patrol searches other cars as well." *Ortiz* at 895, 95 S.Ct. at 2588.

and again at 897, 95 S.Ct. at 2589, Footnote Number 3:

"Not every aspect of a routine automobile 'inspection,' as described in [Note] 1, supra, necessarily constitutes a 'search' for purposes of the Fourth Amendment. There is no occasion in this case to define the exact parameters of an automobile 'search.'

" . . . Nor do we suggest that probable cause would be required for all inspections of private motor vehicles."

and again at 898, 95 S.Ct. at 2589, Mr. Justice Rehnquist, concurring:

"I wish to stress, however, that the Court's opinion is confined to full searches, and does not extend to fixed-checkpoint stops for the purpose of inquiring about citizenship. Such stops involve only a modest intrusion, are not likely to be frightening or significantly annoying, are regularized by the fixed situs, and effectively serve the important national interest in controlling illegal entry. I do not regard such stops as unreasonable under the Fourth Amendment, whether or not accompanied by 'reasonable suspicion' that a particular vehicle is involved in immigration violations [cite omitted], and I do not understand today's opinion to cast doubt upon their constitutionality."

■ Despite the fact that the Supreme Court did not pass on the basic issue here involved, the right of the Border Patrol to operate fixed checkpoints and question travelers as they pass by, it did take pains to distinguish between full searches and inspections which strongly suggests, in the mind of this Court, that neither probable cause nor reasonable suspicion nor consent is needed for an initial inspection. Furthermore, this Court must take note of the fact that the question of the legality of the initial stop was squarely before the Court and the Court could have certainly struck down the legality of the initial inspection if it so desired but yet did not do so. Considering all of the above, it is this Court's opinion that *Ortiz* is a recognition, if not a tacit approval, of the right of the Border Patrol to stop cars at fixed checkpoints away from the border and question the occupants as to their citizenship.

■ Under this interpretation, *Ortiz* directly supports the *Fuentes* holding that the initial stopping of a vehicle at a checkpoint is legal because it is reasonable, and that the full search of the car based on probable cause gained during the initial inspection is legal under the plain view theory.

A separate and independent ground asserted in *Fuentes* for upholding searches carried out at fixed checkpoints is that the La Gloria checkpoint was the second river or functional equivalent of the border. It is well settled that searches performed by Customs or Immigration Officials at our international borders, or their functional equivalents, need not be based on probable cause or reasonable suspicion. Rather, their legality stems from the sheer reasonableness of searching persons entering into the country. *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

■ In *Almeida-Sanchez* the Supreme Court stated that, "an established station near the border, at a point marking the confluence of two or more roads that extend from the border, might be functional equivalents of border searches."

*Almeida-Sanchez* at 273, 93 S.Ct. at 2539. In *Fuentes* this Court held that the La Gloria checkpoint was the functional equivalent of the border because of its geographic location in relationship to the border and roads leading therefrom as well as because of the variety of evasive techniques used by aliens wishing to illegally penetrate the interior of our country. In *Ortiz* the Government did not rely on the functional equivalency of the San Clemente checkpoint. The question of functional equivalency was not before the Supreme Court in *Ortiz* and the *Ortiz* opinion does not cast any doubt upon the Supreme Court's earlier suggestion that a checkpoint may be the functional equivalent of the border. Thus, the second river theory remains a viable basis for upholding searches at the La Gloria checkpoint without any reference to the presence or absence of probable cause or reasonable suspicion, although the Court need not rely on the second river theory in the case at bar.

In the case at bar this Court found that during a legal Border Patrol check Border Patrol Agent Joe Smith came into knowledge of facts which provided him with probable cause to believe that the vehicle contained contraband in the trunk. A search of the trunk revealed 152 pounds of marihuana in brick-like form. This Court concludes that under the recent Supreme Court case of *United States v. Ortiz, supra,* this Court was correct in holding in its Memorandum and Order filed in this case on March 12, 1975, that the search of the Defendant's car was legal. This conclusion is buttressed by the Fifth Circuit's *per curiam* post *Ortiz* opinion in *United States v. Santibanez,* 517 F.2d 922 (C. A. 5, 1975) wherein the Fifth Circuit affirmed this Court's denial of a Motion to Suppress evidence from a search made upon probable cause gained during an immigration check at the La Gloria checkpoint. Although the panel noted that the question of the legality of the initial stop at the checkpoint for purposes of an immigration check was expressly reserved by the Supreme Court in *Ortiz,* it found no constitutional dereliction in stopping vehicles at this checkpoint for the purpose of determining the occupant's citizenship, a practice the panel found to be considerably less intrusive than a search.

The Defendant Enrique Alvarez-Gonzalez will present himself to this Court on August 22, 1975, at 9:30 a. m. for sentencing.