Edward BUNKER, Petitioner-Appellant,

v.

Jack WISE, Respondent-Appellee.

No. 76–1781.

United States Court of Appeals,
Ninth Circuit.

Feb. 8, 1977.

Nicholas R. Allis, Asst. Deputy Federal Public Defender (argued), Los Angeles, Cal., for petitioner-appellant.

Dexter Lehtinen, Asst. U. S. Atty. (argued), Los Angeles, Cal., for respondent-appellee.

## OPINION

Before MERRILL, WRIGHT and TRASK, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

By stipulation of the parties, appellant not then being represented by counsel, this appeal was scheduled for the court's Accelerated Disposition Calendar. When the cause was argued, appellant was represented by counsel who suggested that oral disposition would be inappropriate.

We requested supplemental briefs on the question of the applicability to this case of *United States v. Harris,* 534 F.2d 141 (9th Cir. 1976). Those briefs having been filed and considered, this cause is now submitted for decision. We are unable to distinguish

this case from our recent decision in *Harris, supra,* and the rationale of the cases cited therein.

We reverse the judgment of the district court and remand with directions to permit Bunker to withdraw his guilty plea and plead anew.

### I.

■ In this proceeding under 28 U.S.C. § 2255, Bunker challenged his 1973 sentence and sought to withdraw his guilty plea to a charge of conspiring to distribute heroin and cocaine.[1] It was conceded that, in proceeding under F.R.Cr.P. 11,[2] the district judge failed to mention that a finding of guilt on the charge carried with it a special parole term of at least three years, 21 U.S.C. § 841(b)(1)(B). He advised Bunker that he could receive 15 years imprisonment and a fine of $25,000. The sentence given was six years confinement, to run concurrently with a sentence then being served plus a minimum special parole term of three years.

At the hearing below, Bunker testified that he was prejudiced by the court's failure to mention the special parole term and that he would not have pleaded guilty had he known of it. He said that he was a drug addict who, if placed on special parole, would inevitably return to drugs and a life of crime to support his habit. He would have preferred nine years confinement. The lower court denied the motion, and Bunker appeals.

### II.

In our recent decision in *Harris, supra,* we held that when a guilty plea is taken, F.R.Cr.P. 11 mandates that the defendant be advised that a mandatory special parole

1. Bunker's § 2255 petition was filed prior to our decision in *Harris* and therefore, he was clearly in the "pipeline", *Williams v. United States,* 401 U.S. 646, 656–58, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

2. Rule 11 at the time of the plea provided that a guilty plea "[must be] made voluntarily with understanding of the nature of the charge and the consequences of the plea."

The Rule subsequently has been amended to "identif[y] more specifically what must be explained to the defendant," Notes of the Advisory Committee on the present Rule 11(c).

As a result, the court now must advise the defendant of "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." F.R.Cr.P. 11(c)(1).

term will be appended to the sentence. *Id.* at 141–42. This case is indistinguishable from *Harris.* Therefore, the issue before us is whether *Harris* should be given only prospective effect. We believe not.

The threshold question in determining the effect to be given *Harris* is whether the decision establishes a new rule under the standards enunciated in *United States v. Bowen,* 500 F.2d 960, 975 (9th Cir. 1974) (Part II, Wallace, J.), *aff'd on other grounds,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). *See also Bracco v. Reed,* 540 F.2d 1019, 1020 (9th Cir. 1976).

■ Under *Bowen,* if *Harris* establishes a new rule then we must determine whether the new rule is to be applied retroactively under the traditional three-pronged analysis pursuant to the *Linkletter* line of cases, *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).[3] If *Harris* does not do so, then "no such testing is necessary as, by definition, without a new rule, there is no change in the law and the question of retroactivity is immaterial." *Bowen, supra,* 500 F.2d at 975.

We stated, in *Bowen,* that to constitute a new rule the decision "must either (1) overrule clear past precedent or (2) disrupt a practice long accepted and widely relied upon." *Id.*

■ With this test in mind, an examination of *Harris* reveals that it did not cross the "threshold of novelty" necessary to trigger retroactivity analysis. Prior decisions of the Supreme Court and this circuit foreshadowed the result in *Harris.*

Four years before *Bunker* entered his plea, the Court in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), held that no guilty plea is proper without strict adherence to the procedures and language of Rule 11 in "determining that the plea is made voluntarily with understanding of . . . the consequences of the plea."[4]

Moreover, prior decisions of this circuit made clear the need to advise Bunker of the mandatory special parole term as a direct, and not a collateral, consequence of the plea.[5] As early as 1964, Rule 11 required that a defendant be advised when the plea was taken that he was statutorily ineligible for parole, *Munich v. United States,* 337 F.2d 356 (9th Cir. 1964).

One year later we held that, where the maximum penalty was less than six years and the defendant entering the plea was eligible for sentencing under the Federal Youth Corrections Act, he must be advised of this fact and the terms that attached to such a sentence, *Freeman v. United States,* 350 F.2d 940, 942 (9th Cir. 1965).

In *Combs v. United States,* 391 F.2d 1017 (9th Cir. 1968), we held that Rule 11 required that a defendant be informed of the maximum allowable sentence he could receive.

Three years later in *United States v. Myers,* 451 F.2d 402 (9th Cir. 1972), a plea under Rule 11 was held invalid because the defendant was not aware that any sentence the federal court might impose would not

---

**3.** The cases since *Linkletter, supra,* require an analysis of three criteria:

(1) the purpose of the new rule; (2) the extent of reliance upon the old rule; and (3) the effect retroactive application would have upon the administration of justice.

*Halliday v. United States,* 394 U.S. 831, 832, 89 S.Ct. 1498, 1499, 23 L.Ed.2d 16 (1969); *see also Michigan v. Payne,* 412 U.S. 47, 51, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973).

**4.** More than forty years before *McCarthy* the Supreme Court observed that:

"Out of just consideration for persons accused of crime, courts are careful that a plea of guilty [should] not be accepted unless made voluntarily after proper advice and

with full understanding of the consequences."

*Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *see also Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

**5.** Collateral consequences have been held to include: civil proceedings leading to commitment; loss of good time credit; loss of the right to vote and travel abroad; and the possibility of an undesirable discharge from the armed services. *See Fruchtman v. Kenton,* 531 F.2d 946, 949 (9th Cir. 1976), and cases cited therein.

begin to run until he was received in federal custody. In so holding, the panel reviewed previous cases in our circuit and concluded: "that any factor that necessarily affects the maximum term of imprisonment is a consequence of the plea within the meaning of Rule 11." *Id.* at 404.

The same year, we recognized that Rule 11 was violated when the court failed to inform the defendant of the range of allowable punishments to which the plea subjected him. *Cunningham v. United States,* 461 F.2d 995 (9th Cir. 1972).

The panel in *Harris* recognized the on-going applicability of *McCarthy* and the prior decisions of the circuit to support its conclusion that *Harris* was the logical result of "our prior decisions." *Harris, supra,* 534 F.2d at 142.[6] The court employed such prior precedent, as applied to variant fact situations, to establish that "the court's failure to apprise Harris of the special parole term violated that [*McCarthy*] requirement; the imposition of a mandatory special parole term is a 'consequence of the plea' *within the meaning of the rule.*" *Id.* (Emphasis added.)

The Second Circuit faced the identical problem before us and decided not to limit Rule 11's command to prospective application, *Ferguson v. United States,* 513 F.2d 1011 (2d Cir. 1975). The crux of the opinion in *Ferguson* was that the circuit's decision in *Michel v. United States,* 507 F.2d 461 (2d Cir. 1974), holding that defendants who plead guilty to charges under the Drug Control Act must be informed of the mandatory term of special parole at the taking of the plea:

does not reach the threshold of novelty which must be crossed before one enters upon the now familiar tripartite retroactivity analysis. . . . Retroactivity analysis is appropriate for cases departing radically from precedent . . . or announcing new rules which conflict with well-established prior practice . . . But it is irrelevant to that application of well-established principles to varying fact situations which represents the bulk of judicial decision-making.

*Ferguson, supra,* 513 F.2d at 1012–13.

■ We recognize that many aspects of traditional parole[7] need not be communicated to the defendant by the trial judge under the umbrella of Rule 11. For example, a defendant need not be advised of all conceivable consequences such as when he may be considered for parole or that, if he violates his parole, he will again be imprisoned. The nature and operation of mandatory special parole terms under the Drug Control Act, however, are very different and merit their classification as direct consequences of the plea.

Both the language of the 1973 Amendment, 21 U.S.C. § 841(c), and the policy statement of the Director of the Bureau of Prisons recognize that mandatory special parole terms are a new idea. The statute provides that such terms "[should] be in addition to, and not in lieu of, any other parole provided for by law." In fact, the mandatory term takes effect after the expiration of normal parole or after mandatory release.

Norman A. Carlson, director of The Bureau of Prisons, explicitly noted its differences and added: "This is a new concept and must be considered in conjunction with the sentence procedure used by the court."

---

**6.** The line of cases in this circuit since *Hinds v. United States,* 429 F.2d 1322 (9th Cir. 1970) is distinguishable. In *Hinds,* the court held that a defendant need not be informed of the possibility of consecutive sentences on several counts of a single indictment. The rationale was that he could total the various maxima to determine the possible sentence.

As we stated in *Myers, supra,* a central difference between those cases and this is that here the "defendant was unaware of the facts which he needed to make an assessment." 451 F.2d, at 405.

**7.** Traditional parole can be defined as: "a conditional release from incarceration under supervision at a time prior to the expiration of the full term set by the sentencing court." *Roberts v. United States,* 491 F.2d 1236, 1238 (3d Cir. 1974).

Policy Statement, Bureau of Prisons, 7500.-43, January 18, 1973.

■ The terms of the mandatory special parole also are unique because a special parole violator receives no credit for the time spent on parole and can be returned to prison for the entire term of the special parole. Additionally, there does not appear to be an upper limit to the term of special parole, nor the length of imprisonment following its violation. *See, e. g., Johnson v. United States,* 539 F.2d 1241, 1244 (9th Cir. 1976).

The nature of mandatory special parole and its differences from normal parole were the principal reasons that the Third Circuit held mandatory special parole terms to be a direct consequence of the plea under *McCarthy* and its progeny in the circuits. *See Roberts v. United States,* 491 F.2d 1236 (3d Cir. 1974).

■ Our decision in *Harris, supra,* should not be limited to prospective application because that decision merely applied an existing rule, and not a new one, to a variant fact situation. Bunker should be afforded the opportunity to plead anew.

REVERSED AND REMANDED.