Francisco Salazar **CADENA**, Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 81 Civ. 2855 (RLC).

United States District Court,
S. D. New York.

January 8, 1982.

Francisco Salazar Cadena, pro se.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for United States of America; Michael Q. Carey, Administrative Asst., U. S. Atty., New York City, of counsel.

**3.** The counsel fees totaled $15,038.00, and expenses totaled $720.51.

## OPINION

ROBERT L. CARTER, District Judge.

Petitioner, Francisco Salazar Cadena, moves, pursuant to 28 U.S.C. § 2255, to set aside his conviction of conspiracy to distribute cocaine. Salazar was found guilty in 1976 and was sentenced to 13 years imprisonment. His conviction and sentence were affirmed on appeal. *United States v. Mejias,* 552 F.2d 435 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). Salazar now relies upon the recent United States Supreme Court decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), to argue that evidence introduced at his trial was seized incident to an unlawful arrest and was, therefore, inadmissible. In *Payton,* the Supreme Court held that a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest was unconstitutional. That decision is of no aid to the petitioner, however, because that ruling should be given prospective effect only. The motion, therefore, is denied.

Salazar was apprehended after police officers forcibly entered the apartment of a co-defendant, Reverend Alberto Mejias.[1] The dwelling had been under surveillance and the officers had probable cause to believe that the occupants were engaged in illicit activities relating to narcotics distribution. The officers did not obtain arrest warrants, and only five hours after the detention did they secure search warrants and seize evidence.

At the trial, the defendants sought to suppress the evidence obtained from Mejias' apartment because of the warrantless arrest. The court admitted the evidence, *see United States v. Mejias, supra,* 417 F. Supp. at 602–03, and the Court of Appeals, *United States v. Mejias, supra,* 552 F.2d at 442 n. 12, specifically approved the district court's rationale for so doing because at the time of the arrest,

> [i]t was lawful for the state officers to force entry into Mejias' apartment to arrest him ... Section 120.80(5) of the New York Criminal Procedure Law allows an officer, otherwise authorized to arrest, to break into premises when refused entry, after first having given notice of his authority and purpose. Since it is uncontroverted that Palazotto [the arresting officer] had probable cause to believe that Mejias was committing a crime, and that Mejias was present in the apartment, the warrantless arrest in this case was authorized. N.Y.C.P.L. §§ 140.10(1), 140.15.

*Id.* at 444.[2]

At the time of the *Mejias* appeal, the United States Supreme Court had not addressed the question of whether the Fourth Amendment permitted warrantless arrests in a suspect's home absent exigent circumstances. *See Payton v. New York, supra,* 445 U.S. at 574–75, 100 S.Ct. at 1374; *United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 825, 46 L.Ed.2d 598 (1976) (explicitly reserving judgment on question of war-

1. Salazar contends that he was a co-tenant of the apartment. This issue, which is relevant to Salazar's standing to raise the Fourth Amendment claim, need not be resolved because *Payton* does not apply retroactively. The facts are fully set out in *United States v. Mejias,* 417 F.Supp. 598, 600–02 (S.D.N.Y.1976) (Carter, J.).

2. Salazar first disputed the legality of the seizure under state law during state criminal proceedings against him. The state court excluded the evidence Salazar sought to suppress because that court found that the police entered Mejias' apartment, not to arrest Mejias, but to secure the premises and its occupants until a search warrant could be obtained. Neither state nor federal law permitted such a warrantless seizure for purposes of a subsequent search. I rejected the state court's conclusion that the entry was not to arrest Mejias and admitted the evidence because state law permitted such entry and arrest without a warrant and federal law on the question was unsettled. *See United States v. Mejias, supra,* 417 F.Supp. at 602–03. The Court of Appeals affirmed with the note that a "federal court is not bound by the state court ruling. See generally *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960)." *United States v. Mejias, supra,* 552 F.2d at 444 & n.12.

rantless residential arrests). Although the *Mejias* defendants challenged the admissibility of some of the evidence seized in the apartment, they did not raise directly the issue of the constitutionality of the warrantless arrest. A year later, and two years prior to *Payton*, the Court of Appeals for this circuit declared that such arrests violated the Constitution. *See United States v. Reed*, 572 F.2d 412 (2d Cir.), *cert. denied*, 439 U.S. 913, 99 S.Ct. 283, 58 L.Ed.2d 259 (1978). Most of the other United States Courts of Appeals that considered the matter prior to *Payton* reached a similar conclusion. *See, e.g., United States v. Houle*, 603 F.2d 1297 (8th Cir. 1979); *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978); *Dorman v. United States*, 435 F.2d 385 (D.C.Cir. 1970).

In *Payton*, the Supreme Court invalidated an arrest made in circumstances resembling the apprehension of Salazar and Mejias and in accordance with NYCPL § 140.15, and that decision would render Salazar's detention constitutionally suspect if it were made today. The Supreme Court has made clear, however, that the Constitution neither requires nor prohibits retroactive application of a new constitutional rule. *E.g., Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965).

The Court has been less lucid in its directions concerning the identification of circumstances appropriate for retroactive application. *See, e.g., Brown v. Louisiana*, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980), (no majority opinion; conflicting tests applied to reach judgment); *United States v. Peltier*, 422 U.S. 531, 535, 95 S.Ct. 2313, 2316, 45 L.Ed.2d 374 (1975) (applying test different from either test suggested in *Brown*); *cf. Hankerson v. North Carolina*, 432 U.S. 233, 246, 97 S.Ct. 2339, 2346, 53 L.Ed.2d 306 (1977) (Powell, J., concurring in the judgment) (court has failed to fashion satisfactory retroactivity doctrine). The procedure apparently subscribed to by a majority of the Court requires, at the outset, determining whether *Payton* actually announced a "new" rule or merely clarified and concretized equivocal precedent,[3] and then, if it is a new rule, applying a three step test to ascertain whether retroactive effect is appropriate.[4] *See, e.g., Brown v. Louisiana, supra*, 447 U.S. at 328, 100 S.Ct. at 2219 (Brennan, J.) (three part test); *id.* at 337, 100 S.Ct. at 2225 (Rehnquist, J., dissenting) (three part test is correct approach); *United States v. Bowen, supra*, 500 F.2d at 975 (new law/old law distinction).

The Court has identified as "new" law, decisions that overrule clear past precedent,

**3.** The Court has equivocated about the need to make the threshold determination of whether a "new" rule has been announced. *See Linkletter v. Walker, supra*, 381 U.S. at 622–27, 85 S.Ct. at 1733–36 (discussing judicial discontinuities as "changes" in law thereby avoiding new law/old law distinction). In *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), for example, Justice Blackmun writing for four members of the Court suggested that this factor should be subordinated to the question of whether the prior rule was "so unfair as to be void *ab initio.*" *Id.* at 675, 93 S.Ct. at 2933. In other cases the Court has assumed, without discussion, that the change in the law announced previously created a new rule. *See, e.g., United States v. Peltier, supra*, 422 U.S. at 544, 95 S.Ct. at 2321 (Brennan, J., dissenting) (challenging Court's refusal to apply *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) retroactively, and asserting that *Almeida-Sanchez* did not mark shift in law); *United States v. Bowen*, 500 F.2d 975 n.1 (9th Cir. 1974), *aff'd*, 422 U.S.

916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975) (applying new law analysis but questioning appropriateness of test to all cases).

**4.** Although a majority of the Court recently endorsed the three part test, this consensus evaporated in the application of the test to the facts of the case. *See Brown v. Louisiana, supra*, 447 U.S. at 328–34, 337–38, 100 S.Ct. at 2220–23, 2225. Moreover, some members of this "coalition" have recorded different approaches to retroactivity analysis. *Compare id.* at 337, 100 S.Ct. at 2225 (Rehnquist, J., dissenting) (three step test is correct approach) *with United States v. Peltier, supra*, 422 U.S. 531, 95 S.Ct. at 2314 (Rehnquist, J., for the Court) (no use of three step test). A minority of the justices eschew the three part test and subscribe instead to the standard that new constitutional rules should apply retroactively in cases still pending on direct review and only in such cases. *Brown v. Louisiana, supra*, 447 U.S. at 337, 100 S.Ct. at 2225 (Powell, J., with whom Stevens, J., joins).

or that depart from accepted past practices. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). Such departures may occur if the court decides an issue of first impression that is not clearly foreshadowed, *id.,* or if it reaches a clearly anticipated outcome that disrupts longstanding, widespread practice, *see Desist v. United States,* 394 U.S. 244, 248, 89 S.Ct. 1030, 1032, 22 L.Ed.2d 248 (1969). Without doubt, *Payton* did not overturn any prior decision of the Court, but whether *Payton*'s predecessors anticipated its outcome is less obvious.

The Court of Appeals for the Ninth Circuit considered an analogous question in deciding to apply retroactively its decision in *United States v. Prescott, supra,* that declared, prior to *Payton,* the unconstitutionality of warrantless in-home arrests. The court concluded that the flux in the law concerning such arrests, coupled with the Supreme Court's persistent avoidance of the issue, signaled judicial sensitivity to the existing practice and thereby forecast the *Prescott* decision. Accordingly, the court held that the law in the Ninth Circuit always prohibited such arrests and that *Prescott* did not state new standards. *United States v. Blake,* 632 F.2d 731, 736 (9th Cir. 1980).

This reasoning, with all respect, is unpersuasive because judicial reluctance to decide an issue more likely reveals doubt than certainty of the requirements of the law. *Payton*'s ancestors obscured rather than illuminated the form of their progeny. The Supreme Court's decision in that case surely defined a new rule for the federal law of search and seizure.

The Supreme Court's observation that warrantless residential arrests enjoyed a lengthy and broad reaching pedigree and were sanctioned by a majority of the states that considered the issue buttresses this conclusion of *Payton*'s novelty. *Payton v. New York, supra,* 445 U.S. 598–600, 100 S.Ct. 1386. In New York, most importantly, " 'the statutory authority of a police officer to make a warrantless arrest . . . ha[d] been in effect for almost 100 years[.]' " *Id.* at 582, 100 S.Ct. at 1377, *quoting People v. Payton,* 45 N.Y.2d 300, 324, 408 N.Y.S.2d 395, 380 N.E.2d 224, 238 (1978) (Cooke, J., dissenting).

■ Having answered affirmatively the threshold question whether *Payton* announced a new rule that disrupted a practice long accepted and widely relied upon, the court must apply the Supreme Court's tripartite test to determine whether to apply that rule retroactively. This test requires examination of: (a) the purpose that the new standards serve, (b) the extent that law enforcement authorities relied on the old yardsticks, and (c) the degree that retroactive application would encumber the administration of justice. *E.g., Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

■ The first factor, the purpose that the new rule serves, leads the three in importance and strongly supports prospectivity for decisions amplifying the evidentiary exclusionary rule. *E.g., Desist v. United States, supra,* 394 U.S. at 249, 89 S.Ct. at 1033. The Supreme Court has limited retroactive application of its criminal procedure rules to circumstances in which the " 'major purpose of [the] new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials,' *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971)." *United States v. Peltier, supra,* 422 U.S. at 535, 95 S.Ct. at 2316. The exclusionary rule, by contrast, has not been applied retroactively because it serves not to enhance truth finding, but to deter police misconduct. *Id.* at 536, 95 S.Ct. at 2316. This reasoning dictates the prospective application of *Payton* because that decision invoked the exclusionary rule to enforce a constitutional protection of privacy that is independent of the integrity of the fact-finding process. *See Payton v. New York, supra,* 445 U.S. at 602, 100 S.Ct. at 1388; *accord United States v. Corcione,*

**388**

592 F.2d 111, 118 (2d Cir.), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1545, 59 L.Ed.2d 794 (1979) (declining to apply *United States v. Reed, supra*, retroactively).

The second factor, reliance by law enforcement authorities on the old standards, resembles an element of the threshold test. *See United States v. Bowen, supra*, 500 F.2d at 978. In both instances the court must ascertain the state of the law prior to the announcement of the new doctrine. As discussed above, at the time of Salazar's arrest, New York law explicitly authorized warrantless arrests of suspects in their homes. The police officers entered Mejias' apartment in good faith reliance upon state law. Granting a new trial in these circumstances would not encourage police respect for constitutional restraints on their actions, but would penalize the constabulary for obeying statutory commands.

Of particular concern in the third factor, the effect on the administration of justice, is whether retroactive application would necessitate the retrial of such large numbers of criminal indictments as to overburden the judicial system. The record is inadequate to ascertain the effect of *Payton* if it were applied retroactively, but even if this impact posed no hurdle the strong arguments against retroactivity presented by the purpose and reliance tests dictate that *Payton* be accorded prospective effect only.

Accordingly, the petition for a new trial is denied.

IT IS SO ORDERED.