**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ivan SIGMOND–BALLESTEROS,
Defendant–Appellant.**

**No. 00–50408.**

United States Court of Appeals,
Ninth Circuit.

Filed Oct. 24, 2002.

Patrick K. O'Toole, United States Attorney (on brief), Carol C. Lam, United States Attorney (when opinion was filed), David P. Curnow, Assistant United States Attorney, U.S. Attorney's Office, San Diego, CA, for Plaintiff–Appellee.

Vince J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: FERGUSON, TASHIMA, and FISHER, Circuit Judges.

Order; Dissent by Judge KLEINFELD

**ORDER**

Judges Tashima and Fisher have voted to deny the petition for rehearing en banc and Judge Ferguson so recommends.

A judge of the court requested a vote on en banc rehearing, but the vote failed to secure a majority of the nonrecused, active judges of the court.

The petition for rehearing en banc is denied.

KLEINFELD, Circuit Judge, with whom Circuit Judges KOZINSKI, O'SCANNLAIN, T.G. NELSON, GOULD and TALLMAN join, dissenting from denial of rehearing en banc:

Here we go again. The decision that we have decided not to rehear en banc defies

a Supreme Court decision that reversed a previous decision of ours, making the identical error, arguably creates a mistaken rule on "profiling," and reduces America's ability to patrol its borders.

This case involves a stop, nothing more. The fellow with whom the Border Patrol Agent wanted a chat aroused his interest by numerous indices of suspiciousness:

(1) It was four in the morning, a time when there were a lot of eighteen wheelers on the road, but little "residential traffic," according to the Border Patrol Agent;

(2) The pickup truck was headed north from an international border, seven miles south of a Border Patrol checkpoint, and the checkpoint was closed at that wee hour. The agent's experience had been that there was a lot of smuggling from the south when the checkpoint was closed—smugglers had been caught there just a couple of hours before;

(3) The driver turned his head away and covered his face when he drove past the Border Patrol Agent, which in the agent's experience most drivers didn't do;

(4) The driver pulled into the slow lane and slowed down, and the agent passed him and shined a light into the truck. This was a four door, crewcab truck, which means it was designed to have a back seat for additional passengers, yet the back seat was missing. That obviously leaves more room for smuggled aliens or cargo, though the Border Patrol Agent didn't testify to this obvious inference;

(5) The driver again blocked the agent's view of his face with his hand as the agent passed him;

(6) The truck pulled onto the shoulder, and when the Border Patrol Agent then pulled onto the shoulder behind him, the driver of the crew-cab truck turned down a dead-end farm dirt road.

According to the panel, "approximately eighteen people," including several undocumented aliens, were in the back of the crew-cab—no wonder the smuggler had to take out the back seat.

The panel blithely regards all this as unsuspicious. The panel suppressed evidence that undocumented aliens were stuffed into the cab on the ground that the Border Patrol Agent didn't have a "reasonable" suspicion supported by "a particularized and objective basis."[1]

We've been here before.[2] In *Arvizu*, another smuggling driver case, we held that a stop based on a similar list of factors was unconstitutional, where each factor might have an innocent explanation and none manifested unlawful conduct.[3] The Supreme Court unanimously reversed.[4] We gave lip service in that case,

---

**1.** *United States v. Sigmond–Ballesteros*, 285 F.3d 1117, 1121 (9th Cir.2002) (internal quotation marks omitted).

**2.** Not only have we been here before jurisprudentially, we even have a significant body of law about smugglers caught on this particular stretch of highway. *See, e.g., United States v. Montero–Camargo*, 208 F.3d 1122 (9th Cir. 2000) (en banc); *Bowen v. United States*, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975), *aff'd* 500 F.2d 960 (9th Cir.1974) (en banc); *United States v. Larios–Montes*, 500 F.2d 941 (9th Cir.1974).

**3.** *United States v. Arvizu*, 232 F.3d 1241 (9th Cir.2000), *rev'd*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).

**4.** *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Justice Scalia wrote a concurring opinion, expressing a differing view on the scope of review but otherwise joining the majority opinion.

as in this one, to the rule that we had to consider the "totality of the circumstances," but instead we dismembered the Border Patrol Agent's reasons, noting that several were entitled to little or no weight because they were often consistent with lawful conduct, and what was left wasn't enough to be suspicious.

After our *Arvizu* opinion dismembered the Border Patrol Agent's list of reasons for suspicion, the Supreme Court dismembered our opinion. The Court held that we had failed to follow the "totality of the circumstances" test by isolating and rejecting any factor susceptible to innocent explanation:

> We think that the approach taken by the Court of Appeals here departs sharply from the teachings of these cases. The court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the "totality of the circumstances," as our cases have understood that phrase. The court appeared to believe that each observation by [the agent] that was by itself readily susceptible to an innocent explanation was entitled to "no weight." See [*Arvizu*,] 232 F.3d at 1249–51. *Terry*, however, precludes this sort of divide-and-conquer analysis.[5]

Yet the panel opinion in *Sigmond–Ballesteros* does exactly what the *Arvizu* panel did, and it does it in the same way, citing and quoting the right rule but not following it. Four in the morning wasn't suspicious because people drive to construction jobs then; the location wasn't suspicious because a lot of non smugglers use that road too; the driver hiding his face wasn't suspicious because he might have been trying to keep the light out of his eyes; the crew-cab truck with the back seat missing wasn't suspicious because lots of styles of vehicle are used for smuggling and lots of crew-cab trucks are used for innocent activities and the missing back seat didn't amount to much; and the driving wasn't suspicious because the driver didn't break any laws and might have just been trying to let a tailgater pass.

Well, maybe so. And maybe he was smuggling aliens, with eighteen people stuffed where the back seat should have been. The Supreme Court already told us in *Arvizu* that we can't use this kind of "divide-and-conquer analysis."[6] The "totality of the circumstances" may well give rise to reasonable suspicion even when "each of these factors alone is susceptible to innocent explanation."[7]

In *Brignoni–Ponce*, the Supreme Court listed a number of factors, the totality of which gave rise to reasonable suspicion. They're a lot like the ones in the case at bar:

> (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the drive[r] including obvious attempts to evade officers; (6) appearance or behavior of the passengers; (7) model and appearance of the vehicle; and (8) officer experience.[8]

None of these factors necessarily involve illegal behavior on the part of the defendant, yet they can still contribute to reasonable suspicion. This is why the Supreme Court required us in *Arvizu* to

---

5. *Id.* at 751 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

6. *Id.*

7. *Id.* at 753.

8. *United States v. Brignoni–Ponce*, 422 U.S. 873, 884–85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), as *cited in United States v. Tiong*, 224 F.3d 1136, 1139 (9th Cir.2000) (internal citations omitted).

consider the factors in context—it is the nature of reasonable suspicion that any isolated aspect of the suspicious behavior might be easily explained away.

The *Sigmond–Ballesteros* panel was concerned that the driver is damned if he does and damned if he doesn't—if he speeds, he can be stopped on a pretext under *Whren*,[9] and if he moves into the slow lane and lets the border patrol agent pass, he can be stopped because taken together with everything else his lawful conduct seems suspicious. This just isn't a problem. If a driver is going 70 in a 55, he can be stopped, and under *Whren* he can be stopped even if the policeman's real reason for the stop is to see if he is smuggling aliens. And anyone going 55 miles per hour on an interstate where everyone else is going 70 might reasonably be considered suspicious—given the context—precisely *because* he is abiding by the law. It's suspicious because most American drivers obey the speed limit on the open road with a degree of looseness. Maybe some of us don't think it's suspicious to drive the speed limit at 4:00 a.m. near the border in a four-door, crew-cab truck with a removed rear seat (why drive one of these behemoths except to have a rear seat?), but the Border Patrol Agent, using his experience, thought it was suspicious. And he was right. This is why we allow law enforcement officers "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' "[10] He sees things with that experience that other people simply won't.

Our sister circuits have not shared our difficulty in applying the "totality of the circumstances" test. They have evaluated each factor in the officer's determination and then considered the factors together before determining whether there was reasonable suspicion to justify a stop.[11] After *Arvizu*, our approach splits the circuits into five that take the factors together, and one that separates them and discounts those that might be part of a "profile" or are lawful or consistent with innocent conduct.

The level of suspicion needed for a stop "is considerably less" than the "fair probability" needed for probable cause.[12] In *Sokolow*, a young man in a black jumpsuit wearing gold jewelry, peeled $20's off a roll of around $4,000 to buy airplane tickets for cash, didn't check any bags, and took a very brief trip from Hawaii to Miami—all perfectly legal. No doubt a lot of people in flamboyant outfits fly into Miami with big wads of cash, and doubtless most of them, unlike Sokolow, aren't carrying drugs. That the characteristics of a young man paying for tickets in cash and not checking luggage "may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent."[13]

Lawfulness of conduct often has a weak correlation with suspiciousness. We held

9. *See Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

10. *Arvizu*, 122 S.Ct. at 750–51 (citing *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

11. *See, e.g., United States v. Nelson*, 284 F.3d 472 (3d Cir.2002); *United States v. Sims*, 296 F.3d 284 (4th Cir.2002); *United States v. Espinosa–Alvarado*, 302 F.3d 304 (5th Cir.2002);

*United States v. Martin*, 289 F.3d 392 (6th Cir.2002); *United States v. Hunter*, 291 F.3d 1302 (11th Cir.2002).

12. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted).

13. *Id.* at 10, 109 S.Ct. 1581.

in *Tiong* that even though "every fact that gave rise to suspicion could be consistent with innocent behavior," this and the "absence of law violations ... do not undermine reasonable suspicion."[14] Yet *Sigmond–Ballesteros* ignores what *Sokolow* says about profiling and what our own opinion in *Tiong* says about innocent conduct,[15] and articulates a new (and mistaken) rule that "we must not accept what has come to appear to be a prefabricated or recycled profile of suspicious behavior very likely to sweep many ordinary citizens into a generality of suspicious appearance merely on hunch."[16]

A hunch is an intuition. The Border Patrol Agent probably had a hunch here (and it was correct). A hunch alone isn't enough to justify a stop, but it doesn't take an observed crime in progress or probable cause to justify a stop either. All a stop takes is "a particularized and objective basis"[17] or "a reasonable, articulable suspicion that criminal activity is afoot."[18] That's not much, because a stop isn't much. It's just a chat, not an arrest. The six points discussed above, taken together, furnished a "particularized and objective basis" to think that the driver of the crew-cab was smuggling.

The panel opinion says that "reasonable suspicion may not be based on broad profiles" or "overbroad generalizations" or "a prefabricated or recycled profile."[19] What's the matter with a tried-and-true, reasonably reliable profile? A profile is a checklist, nothing more. Pilots use check-lists, people packing for a trip use check-lists, people going to the grocery store use checklists, so why not Border Patrol Agents? The Supreme Court held in *Sokolow* that "the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent."[20] A profile, if not so broad as to be meaningless or so unfair as to be bigoted, is merely a generalization based on experience about what correlates to crime. Sure, some innocent citizens may be stopped for a chat. But what's so bad about a brief chat with a policeman at four in the morning? A fair and reasonable checklist of suspicious circumstances, i.e., a profile, may be a useful device for sorting out mere hunches from reasonable and objectively based suspicions.

I have to wonder what a terrorist would have to do to be stopped lawfully, under the new rule of *Sigmond–Ballesteros*. Driving on a highway near the border during the wee hours when the checkpoints were closed and holding up his hand so that a border patrol agent couldn't see his face wouldn't do.

Driving a vehicle with an odd, suspicious alteration wouldn't do. So long as he didn't violate the law, he'd be fine. I suppose he could have bumper stickers on his car proclaiming "Jihad!" with a picture of the destruction of the World Trade Center, and since the bumper sticker would be constitutionally protected and perfectly

---

14. *Tiong*, 224 F.3d at 1140.

15. *See id.* (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).

16. *Sigmond–Ballesteros*, 285 F.3d at 1126(quoting *United States v. Rodriguez*, 976 F.2d 592, 595–96 (9th Cir.1992), *amended by* 997 F.2d 1306 (9th Cir.1993)).

17. *Arvizu*, 122 S.Ct. at 750 (citing *Cortez*, 449 U.S. at 417–18, 101 S.Ct. 690).

18. *Wardlow*, 528 U.S. at 123, 120 S.Ct. 673 (citing *Terry*, 392 U.S. at 30, 88 S.Ct. 1868).

19. *Sigmond–Ballesteros*, 285 F.3d at 1121, 1124, 1126.

20. *Sokolow*, 490 U.S. at 10, 109 S.Ct. 1581.

lawful speech, it couldn't be considered as adding significantly to the totality of the circumstances.

We have very open borders, which is a fine thing. And we have Border Patrol Agents to reconcile our openness with a bare minimum of national security and immigration control. *Sigmond–Ballesteros* takes away the opportunity to chat with drivers who, though law abiding so far as the agents can see, arouse suspicion through a number of indicia. That's dangerous and contrary to established law.