UNITED STATES of America,
Plaintiff-Appellee,

v.

Enrique ALVAREZ–GONZALEZ,
Defendant-Appellant.

No. 75–3537.

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1976.

Nago L. Alaniz, San Diego, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

GEE, Circuit Judge:

Appellant Enrique Alvarez-Gonzalez appeals from his conviction in a bench trial for possession of approximately 152 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1970). The sole question on appeal concerns the validity of the district court's ruling that the search of appellant's trunk by a Border Patrol officer at a Border Patrol checkpoint near La Gloria, Texas, was a search at the "functional equivalent" of the border.[1] *See Almeida-Sanchez v. United States,* 413 U.S. 266, 272–73, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Lacking sufficient factual findings by the district court to evaluate its conclusion and desiring to clarify this somewhat unclear area of the law, we remand the case to the district court for further factual findings relevant to the principles expressed herein.

■■ The La Gloria checkpoint is located on Highway 1017, about eight miles northwest of La Gloria, Texas, and about 42 highway miles from the nearest port of entry from Mexico at Rio Grande City, Texas. It is a permanent checkpoint, *see United States v. Santibanez,* 517 F.2d 922, 923 (5th Cir. 1975), a status that allows Border Patrol officers to stop vehicles at it for citizenship checks without probable cause, *see United States v. Martinez-Fuerte,* —— U.S. ——, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), but does not abrogate the requirement that Border Patrol officers have probable cause to proceed further and search

---

1. We consider only whether the La Gloria checkpoint qualifies as the functional equivalent of the border for immigrations searches. We are not called upon to consider whether functional equivalency might also justify a customs search. *Cf. United States v. Hart,* 506 F.2d 887 (5th Cir.), *vacated and remanded,* 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (1975), *reaff'd,* 525 F.2d 1199 (5th Cir. 1976) (on remand).

vehicles so detained. *See United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975).[2] Only at the border or its functional equivalent may Border Patrol officials conduct searches without probable cause, *see Almeida-Sanchez v. United States, supra,* 413 at 272–73, 93 S.Ct. 2535, and as yet we have not determined whether the La Gloria checkpoint is functionally equivalent to the border.[3] Nor do we do so now, since factual determinations are required which were not made below, determinations which should first be addressed by the district court.

Since such an address seems necessary, we think it appropriate to attempt to assist that court by setting out what matters we presently believe it should consider on the remand which we direct. Most of these are suggested, to one degree or another, by our discussion of the Sierra Blanca checkpoint in *United States v. Hart*:[4]

The Sierra Blanca checkpoint is permanent in nature. Approximately one mile west of the checkpoint on Interstate Highway 10, there is a sign which reads, "Inspection station, all vehicles exit one mile." Somewhat closer to the checkpoint, between one-half and three-fourths of a mile west, a second sign reads, "Form one lane right." One thousand yards west of the checkpoint, a third sign states, "Inspection station, all vehicles right lane."

During the hours that the Sierra Blanca checkpoint is open, there are cones positioned in the highway which direct all traffic onto a paved access road to the checkpoint. At the checkpoint itself, there are three stop signs, two with flash-

ing red lights, and a trailer mounted on blocks which the checkpoint officials use as an office. Although all vehicles traveling east on Interstate Highway 10 pass through the checkpoint when it is in operation, the officials do not stop every vehicle and search for aliens. In practice the officials wave some cars and trucks through the checkpoint and stop others to question their occupants.

Certain of these many characteristics may be more important than others in establishing the Sierra Blanca checkpoint as a functional equivalent of the border. One, the checkpoint is permanent in nature. Two, all traffic is diverted through the checkpoint during its hours of operation just as all traffic would be channeled through a port of entry at the border itself. Three, the Sierra Blanca checkpoint operates during the hours when the ports of entry at Fabens and Fort Hancock are closed. Four, Interstate Highway 10 parallels the border for some 50 miles before turning northeast to the checkpoint and the highway comes within two miles of the border itself in many points. Five, there are numerous roads, paths, trails which lead from the border to Interstate Highway 10 which do not pass through any port of entry. And, six, during one thirteen-month period officials at the Sierra Blanca checkpoint apprehended 1,291 aliens who had entered the United States illegally. *Cf. United States v. Byrd,* 483 F.2d 1196, 1199 n. 7 (5th Cir. 1973), modified, 494 F.2d 1284 (5th Cir. 1974). We need not decide which of these factors are absolutely necessary in order to hold that the synergistic effect of these physical and operation-

---

**2.** The search in question occurred prior to the Supreme Court's decision in *Ortiz* that clearly required probable cause for a search at a permanent checkpoint. *See United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623, 629 (1975). We have held that *Ortiz* applies retroactively. *See United States v. Martinez,* 526 F.2d 954, 955 (5th Cir. 1976).

**3.** Our affirmance without opinion pursuant to Local Rule 21 of *United States v. Fuentes,* 379 F.Supp. 1145 (S.D.Tex.1974), aff'd, 517 F.2d 1401 (5th Cir. 1975), is not to the contrary. In

*Fuentes* the district court held that the La Gloria checkpoint was the functional equivalent of the border, but the evidence in that case also suggested that probable cause justified the search that produced contraband. Our unpublished opinion affirmed only the probable-cause justification for the search.

**4.** 506 F.2d 887, 896–97 (5th Cir.), *vacated and remanded,* 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (1975), *reaff'd,* 525 F.2d 1199 (5th Cir. 1976) (on remand).

al characteristics elevates the Sierra Blanca checkpoint to the status of the border's functional equivalent for a § 1357 search.

We reaffirm the considerations which are applied in *Hart's* six factors as appropriate for use in the analysis which the district court must make of La Gloria. We wish, however, to make these considerations somewhat more explicit.

■ *Hart's* first three factors concern the manner of operation of the checkpoint: that it functions like a permanent border checkpoint and not like the roving patrol condemned in *Almeida-Sanchez*[5] or on a radically shifting basis approximating the peregrinations of such a patrol.[6] Thus the character of the checkpoint is the first basic consideration.

■ The second is the ratio between international and domestic traffic passing through the checkpoint in question. The presence of a continuing and significant percentage of domestic traffic through a given checkpoint cannot but be seen as militating against granting it the status of functional equivalency. Indeed, the Ninth Circuit appears to regard this ratio as dispositive:

[I]f a search takes place at a location where virtually everyone searched has just come from the other side of the border, the search is a functional equivalent of a border search. In contrast, if a search takes place at a location where a significant number of those stopped are domestic travelers going from one point to another within the United States, the search is not the functional equivalent of a border search.

*United States v. Bowen,* 500 F.2d 960, 965 (9th Cir. 1974), *aff'd,* 422 U.S. 916, 95 S.Ct.

2569, 45 L.Ed.2d 641 (1975). We do not go so far, but we do emphasize the significance of this consideration in the determination to be made. No checkpoint which occasions, day in and day out, the interdiction of anything approaching a majority percentage of domestic traffic can properly be seen as approximating the border.

■ Finally, an evaluation must be made of the degree to which, as to international traffic, the checkpoint under consideration actually approximates the effect of one physically located at the border. This criterion is exemplified in the application by *Hart's* latter factors, which discern an uncontrolled access from the border to the area which the checkpoint controls, the tactical need for such an interior location for effective control of crossings of the portion of the border involved,[7] and the apprehension at the checkpoint of significant numbers of illegal aliens—this last being, among other things, an indication that much of the international traffic passing through the checkpoint in question has passed through no other.

■ These, then, seem to us the major considerations which should be applied by the district court on remand to evaluate the La Gloria checkpoint for functional equivalence: relative permanence, relatively minimal interdiction of domestic traffic, a capability to monitor portions of international traffic not otherwise practically controllable. We do not intend our list to be exclusive, and the district court should feel free on remand to. consider whatever else it deems appropriate.

■ We remand with instructions that the district court determine, after an appropriate hearing, whether the La Gloria checkpoint constituted the functional equiv-

5. 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

6. This is not to say that the point, if in reasonably constant operation in a fixed area, may not be shifted in location a mile or so occasionally so as to frustrate the specific rendezvous and expectations of the ill-intentioned.

7. Located, perhaps, "at a point marking the confluence of two or more roads that extend from the border . . . ." *Almeida-Sanchez v. United States,* 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973).

alent of the border and certify the record and its findings to us.[8]

REMANDED, with instructions.

8. We adopt the unusual course of retaining this case before our panel because it is not the usual case. As with the issue of voluntariness of the confession in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the question of functional equivalency is dispositive of this appeal. This is so because on the one hand appellant's guilt is plain beyond per-adventure if the search which discovered the marijuana was valid, and on the other the government at oral argument conceded an absence of probable cause to support the search. Since there was, of course, no warrant and since probable cause was not present, the search bears scrutiny only if neither was required. In the circumstances, this can only be so if at the time of the search the La Gloria checkpoint was the functional equivalent of the border. We thus confront precisely the type of inadequately-developed but dispositive and semi-collateral issue which the Court faced in *Jackson,* and the same considerations of judicial economy of effort indicate that neither a complete new trial nor an entire new appeal is needful for a just disposition of the cause. All that is required is the supplemental evidentiary hearing on an issue inadequately developed below which we direct.