**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leonel REYNA, Defendant-Appellant.**

**No. 76–1898.**

United States Court of Appeals, Fifth Circuit.

Nov. 28, 1977.

Ramon Garcia, Edinburg, Tex., for defendant-appellant.

James R. Gough, Jr., U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before GOLDBERG and MORGAN, Circuit Judges, and WYZANSKI, District Judge.*

MORGAN, Circuit Judge:

At issue in this case is whether a search of a vehicle occurring at a permanent checkpoint at Sarita, Texas, resulting in the seizure of marijuana violated appellants' fourth amendment rights under the Constitution. In order to decide this ultimate issue, it is necessary to determine whether the Sarita checkpoint is the functional equivalent of the border for search purposes. Because the record lacks sufficient facts from which a determination can be made, we remand the case to the district court for further factual exploration.

Appellants' car was stopped at the Sarita checkpoint on Highway 77, about five miles south of Sarita. Pursuant to checkpoint authority, the Border Patrol officer inquired of appellant his citizenship status. During the brief questioning, the border officer detected an odor of air freshener. Viewing this absence of marijuana aroma as suspicious, the officer directed appellants' vehicle to a search area. Although the appellant objected to search of the trunk of the vehicle because the trunk was broken, a screwdriver being handy, the trunk yielded its secrets. The search of the trunk revealed 200 pounds of marijuana.

Appellant was convicted in the United States District Court for the Southern District of Texas of knowingly possessing marijuana with intent to distribute pursuant to 21 U.S.C. § 841 and sentenced to two years imprisonment. In arriving at its decision the district court held that, under the circumstances, there was no probable cause for the search. Because of absence of probable cause, the court determined that the search could only be upheld if the Sarita checkpoint is the functional equivalent of the border. If so, the court reasoned, no probable cause was necessary for the search. In order to determine the functional equivalence of the checkpoint, the district court took judicial notice of the physical surroundings and statistical data of the checkpoint. Based on the surrounding geographic area, the necessity for an "inland" search point, and statistical evidence, the district court determined that the Sarita checkpoint was the functional equivalent of the border. This determination frames the issue at bar.

■ The Sarita checkpoint is located about five miles south of Sarita on Highway 77. The checkpoint is about eighty-five miles from the closest point on the Mexican border. Although subsequent to the time in question the checkpoint has been permanent, in 1972 the physical location alternated between two locales. Even if the Sarita checkpoint would qualify in 1972 as a permanent checkpoint that status would only permit stopping the vehicle and questioning the occupants' citizenship, without probable cause, not a full-fledged search. *United States v. Santibanez*, 517 F.2d 922, 923 (5th Cir. 1975). At the functional equivalent of a border, however, Border Patrol officers may conduct searches lacking probable cause, *Almeida-Sanchez v. United States*, 413 U.S. 266, 272–73, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Thus, the question at bar is whether the Sarita checkpoint is the functional equivalent of a border thereby rendering the search of appellants' vehicle reasonable under the fourth amendment.

The criteria for the determination of functional equivalence were expounded by this court in *United States v. Alvarez-Gonzalez*, 542 F.2d 226, 229 (5 Cir. 1976) following *United States v. Hart*, 506 F.2d 887, 896 (5th Cir. 1975), vacated and remanded, 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (1975), reaff'd 525 F.2d 1199 (5th Cir. 1976) (on remand). In *Alvarez-Gonzalez* the court evaluated three basic factors: (1) the character of the checkpoint, (2) the ratio of international and domestic traffic, and (3) the degree to which, in real effect, the checkpoint functions as one physically located at the border.

* Senior Judge for the District of Massachusetts, sitting by designation.

■ The permanence of the checkpoint is the initial consideration. The checkpoint must be permanently located as a border checkpoint would, in order to be functionally equivalent. Therefore, a roving checkpoint approximating a border patrol would not be functionally equivalent to a border checkpoint. *Almeida-Sanchez v. United States*, 413 U.S. at 273, 93 S.Ct. 2535. As the district court has noticed, the Sarita checkpoint has been permanently located five miles south of Sarita since 1973. In 1972, however, the critical time for determination of functional equivalence, the checkpoint was alternating between two "permanent" locations, five miles south of Sarita and twelve miles south of Sarita. Although such alternation does render the permanence of the checkpoint suspect, this movement is not the type of peregrination that would reduce the checkpoint to the equivalent of a border patrol. Therefore, we would hold that the checkpoint was permanent in 1972, absent rebuttal evidence of other roving.

■ Perhaps the most important criterion for the existence of a functional equivalence is the ratio of international traffic to domestic. It cannot be gainsaid that if the percentage of international traffic is low, the United States interest in protecting its border from illegal immigration is to the same extent attenuated. The importance of the nature of the traffic cannot be overstated, as recognized by the Ninth Circuit:

> [I]f a search takes place at a location where virtually everyone searched has just come from the other side of the border, the search is a functional equivalent of a border search. In contrast, if a search takes place at a location where a significant number of those stopped are domestic travelers going from one point to another within the United States, the search is not the functional equivalent of a border search.

*United States v. Bowen*, 500 F.2d 960, 965 (9th Cir. 1974), aff'd, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). As indicated in *Alvarez-Gonzalez*,[1] if the interdiction of do-

mestic traffic approaches the majority, the checkpoint would not be the functional equivalent of the border. Because no determination of the ratio of domestic to international traffic was made below, we remand to the district court to so determine. We hasten to add that the crucial date of determination is as of 1972 not 1977 or 1978. Acceptable evidence would be statistics or other demonstrative evidence from 1972 or statistics from a later time coupled with a showing of lack of changed circumstances since the crucial date in 1972.

Finally, the checkpoint must, as a practical matter, with respect to the international traffic, operate as a *physical* equivalent of a border search point. Relevant to this determination are uncontrolled access to the border that necessitates the inland checkpoint and the actual apprehension of a significant number of aliens. These factors indicate that the international traffic has passed through no other checkpoint and therefore necessitates the internal checkpoint. As the district court noted, the topography of the area is conducive to uncontrolled access to the border thus reducing the effectiveness of border checkpoints. Additionally, a significant number of aliens have been apprehended at the Sarita checkpoint. Again, absent rebuttal evidence, the evidence noticed below would satisfy this court that the Sarita checkpoint is physically equivalent to a border checkpoint.

Because the evidence is insufficient on the second criterion, however, it is impossible to decide whether Sarita is the functional equivalent of a border checkpoint. Even though the facts noticed by the district court would enable us to make a determination concerning the first and third criteria, we believe the better course to be that the district court hold a hearing to determine functional equivalency with *all* criteria open to argument by the adversaries. Accordingly, we remand that the district court may determine, after a hearing, whether the Sarita checkpoint is the functional

1. 542 F.2d at 226.

equivalent of the border and then certify the record and its findings to us.[2]

Remanded.

---

**2.** As in *United States v. Alvarez-Gonzalez, supra* we are retaining the case before us because the question of functional equivalency is dispositive on appeal. As the district court held, and we do not disturb the holding, no probable cause existed for the search. Given the fruits of the search, however, guilt of the appellant is plain if the search was otherwise valid. If the search was invalid, however, the evidence seized would be quashed and insufficient evidence would remain to support a conviction. The validity of the search turns solely on the character of the Sarita checkpoint. Therefore the disposition of functional equivalency is the disposition of the appeal. Judicial economy demands this course because neither a new trial nor a new appeal is necessary for a fair and just determination.