UNITED STATES of America, Plaintiff-Appellee,

v.

Olga Guadalupe DREYFUS–de CAMPOS, Jose Raul Veliz-Valladres and Cesar Agusto Aranda-Arguello, Defendants-Appellants.

No. 82–1368
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1983.

Rehearing Denied Feb. 24, 1983.

Certiorari Denied May 23, 1983.
See 103 S.Ct. 2128.

Joseph A. Calamia, El Paso, Tex. (court-appointed), for Dreyfus-de Campos.

Charles Michael Mallin, El Paso, Tex. (court-appointed), for Veliz-Valladres and Aranda-Arguello.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of conspiracy to possess cocaine with intent to distribute and of possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846 and 841(a)(1), Olga Guadalupe Dreyfus-de Campos, Jose Raul Veliz-Valladres and Cesar Agusto Aranda-Arguello appeal, challenging: (1) the status of the Sierra Blanca, Texas checkpoint as a functional equivalent of the border, and (2) the sufficiency of the evidence. Finding no merit in either assignment of error, we affirm.

### Factual Context

On the morning of March 5, 1982, Dreyfus, Veliz and Aranda were proceeding east on Interstate 10 when their vehicle was stopped at a U.S. Border Patrol checkpoint located four miles west of Sierra Blanca, Texas. Upon learning that all occupants of the vehicle were aliens, the border patrol officer asked to examine their immigration papers. When only Aranda could produce the documents the officer directed the vehicle to a secondary inspection site.

During the ensuing questioning Veliz stated that he had entered the United States the previous month, that his passport had been left in Los Angeles and that the only document in his possession was a temporary identification card issued by the state of California. This card, issued in 1980, contradicted Veliz's statement regarding his date of entry. The officer grew suspicious; Veliz noticeably nervous. Veliz confessed that more papers were in the trunk of the auto, papers which disclosed that Veliz had remained in the United

States beyond the period permitted by the immigration authorities. While examining Veliz's papers the officer saw Veliz toss onto the rear seat a shaving kit which the officer had removed from Veliz's suitcase and placed on the fender. The officer searched the kit, found a bag of marihuana, and placed Veliz under arrest.

When Veliz was arrested, Aranda, who had been fidgeting in the front seat, exited the auto and protested that he was merely a passenger and knew nothing about drugs. At this point the vehicle and its contents were searched. More drugs were found: a small packet of cocaine and hashish was wedged between the front bucket seats, a vial of cocaine was discovered in the glove compartment and approximately 12 ounces of cocaine were found in Ms. Dreyfus's suitcase. Later an additional two ounces were discovered in a hidden compartment in Ms. Dreyfus's briefcase.

### Border Check

The defendants sought suppression of the fruits of the search. The district court denied this relief on the grounds that the Sierra Blanca checkpoint is the functional equivalent of the border, and therefore the search was valid as a border search.

We have twice found the Sierra Blanca permanent immigration checkpoint to be the functional equivalent of the border. *See United States v. Hart,* 506 F.2d 887 (5th Cir.), *vacated and remanded,* 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (1975), *reaff'd on remand,* 525 F.2d 1199 (5th Cir.), *cert. denied,* 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); *United States v. Luddington,* 589 F.2d 236 (5th Cir.1979). We applied a tripartite test in determining functional equivalency: "relative permanence of the checkpoint; minimal interdiction by the checkpoint of the flow of domestic traffic; and the practical necessity of the substitution of the interior checkpoint for the border in order to monitor international traffic." *United States v. Reyna,* 572 F.2d 515, 517 (5th Cir.1978). Unless facts relating to these criteria have changed since the *Luddington* decision in 1979, examina-

tion of the status of the Sierra Blanca checkpoint as the functional equivalent of the border is foreclosed. In *United States v. Salinas,* 611 F.2d 128, 130 (5th Cir.1980), we held:

> It is not required that the underlying facts concerning a particular checkpoint location be proved over and over again in each case arising out of the same checkpoint location, so long as such facts remain unchanged. A court may take judicial notice of functional equivalent status once it has been established.

The only evidence presented to suggest that the circumstances surrounding Sierra Blanca have changed is the personal observations of a transportation engineer and two border patrol officers. The three testified that the traffic through Sierra Blanca appeared to be largely domestic. Because their opinions are unsupported by factual data, and, further, because they are based upon the perceived number of foreign versus domestic license plates—a distinction irrelevant to the definition of "international traffic" (international traffic includes "traffic originating close to the border but on the American side," *United States v. Luddington,* 589 F.2d at 241), the testimony offered by the transportation engineer and two officers is of little persuasive value. It is not sufficient to warrant a re-characterization of Sierra Blanca. The district court properly denied the motion to suppress on the grounds that the search at Sierra Blanca was a valid border search.

### Sufficiency of Evidence

Veliz and Aranda challenge the sufficiency of the evidence. The crime of possession of cocaine with intent to distribute is comprised of three elements: (a) possession, (b) knowledge and (c) intent to distribute. The first element, possession, may be constructive as well as actual, and may be proved by direct or circumstantial evidence. *United States v. Vergara,* 687 F.2d 57 (5th Cir.1982). One who exercises dominion and control over an automobile in which narcotics are concealed may be deemed to be in possession of the narcotics.

*United States v. Niver,* 689 F.2d 520 (5th Cir.1982).

 The elements of the crime of conspiracy to possess are: (a) unlawful agreement, (b) knowledge of the unlawful agreement, (c) intent to join and (d) participation of each of the co-conspirators. *United States v. Vergara.*

 Viewed through the *Glasser* looking glass, the record contains sufficient evidence to satisfy the requirements of all of the elements of both offenses. Appellants met on several occasions before departing Los Angeles. Aranda and Veliz arranged to rent the auto and exercised control over it. Cocaine was found not only in Dreyfus's luggage and briefcase, but also in the glove compartment and in the packet found between the front seats where Veliz and Aranda were riding. Aranda was seen fumbling and moving about in the front seat just prior to discovery of the packet stashed between the seats. Veliz admitted to possession of marihuana and hashish but could not explain the cocaine found in the same container and in the glove box. Finally, the quantity of cocaine seized, approximately 14 ounces, raises the inference of intent to distribute.

Leveled against this array is Dreyfus's statement, as given to the investigating officer, that Aranda and Veliz knew nothing about the cocaine. According to Dreyfus, she had been approached by a man in Miami who asked her to deliver a quantity of cocaine to New Orleans. She explained that she was on her way from Miami to New Orleans, via California, when by coincidence she met two strangers, Aranda and Veliz, who happened to be on their way to New Orleans and who offered her a ride. We are not persuaded.

AFFIRMED.