**UNITED STATES of America**

v.

**Mario Alejandro OYARZUN.**

**No. P–84–CR–04.**

United States District Court,
W.D. Texas,
Pecos Division.

March 5, 1984.

Ricardo D. Gonzalez, U.S. Atty., El Paso, Tex., for plaintiff.

Albert D. Diamond, Miami, Fla., for defendant.

## RULE 12(e) FINDINGS

BUNTON, District Judge.

On this date came on to be made and entered these factual findings as to the granting of Defendant's Motion to Suppress the evidence seized in a search of his automobile on or about December 17, 1983, and this Court, noting that it has previously granted Defendant's Motion in the prosecution for his alleged violation of 18 U.S.C. §§ 922(k) and 924(a), enters the following Findings of Fact pursuant to Fed.R.Cr.P. 12(e) in order to complete this cause's record.

### I.

On or about December 17, 1983, at approximately 1:00 p.m., Defendant MARIO ALEJANDRO OYARZUN, driving a 1983 Pontiac Grand Prix bearing California license plates, attempted to pass through the Sierra Blanca Permanent Border Patrol Checkpoint on Interstate 10, approximately 80 miles east of El Paso, Texas. Upon approaching the checkpoint station, Defendant, driving alone in the vehicle, was routinely asked his national citizenship and legal status within this Country by Border Patrol Agent Saenz, a veteran of less than one year with the Border Patrol. Defendant, a Chilean national, failed to respond to Agent Saenz' questions posed in Spanish. Upon receiving no response from Defendant, Agent Saenz instructed Defendant to drive his vehicle into the secondary inspection area of the checkpoint, an open parking area several yards off the main traveled roadway.

After being requested to step out of his vehicle, Defendant presented his documentation establishing that he was a Chilean national and that he was legally temporarily residing within this Country. Border Patrol Agent Bullock, after fully inspecting Defendant's papers, demanded that Defendant open the vehicle's trunk so that he could search it. Agent Bullock, upon inspecting the interior of the vehicle's trunk, saw that no illegal aliens were being transported within the vehicle. However, Agent Bullock saw some duct tape in the trunk's interior and decided to further search the vehicle because of the tape's presence. Agent Bullock stated that the presence of the duct tape "sparked his suspicion" in the vehicle. Agent Bullock thoroughly searched the vehicle's trunk and in so doing searched a brown paper sack and Defendant's personal luggage located in the vehicle's trunk. This search, being founded only upon Agent Bullock's suspicion having been "sparked" by the presence of duct tape, revealed two separate caches of United States currency in the brown paper sack and Defendant's luggage.

While Agent Bullock had been rummaging through Defendant's personal belongings in the trunk, Border Patrol Agent Stensel searched the vehicle's passenger compartment. In so doing, he searched under the vehicle's rear seat—although he admittedly knew no illegal aliens were secreted under the seat cushion since such would be patently impossible, and that the seat cushion was otherwise securely fastened to the vehicle's floorboard. After removing the vehicle's rear seat, Agent Stensel discovered a Llama .380 pistol with its serial number obliterated. Defendant was then placed under arrest for his violation of 18 U.S.C. §§ 922(k) and 924(a).

Both agents who searched the vehicle did so with the intent of discovering "guns, drugs, or money." It is uncontested that they did not search the personal belongings of Defendant or under the vehicle's rear seat with the intent or with the purpose of discovering illegal aliens hidden within the vehicle. It is also not disputed that the areas that they actually searched could not have contained an illegal alien.

### II.

In an attempt to clarify this grey and nebulous area of Fourth Amendment guarantees, not only for the sake of Defendant, but also for the sake of the Government and its agents, this Court will set out its mental processes in suppressing such evidence seized with the hope that such will guide the Government's actions in the fu-

ture. In so doing it will establish the scope of a vehicle search at a permanent border patrol checkpoint.

■ Initially, this Court notes that the stop of Defendant's vehicle at the Sierra Blanca Permanent Border Patrol Checkpoint by the Border Patrol was a valid stop. *See* 8 U.S.C. § 1357(a)(3); *United States v. Dreyfus de Campos*, 698 F.2d 227 (5th Cir.1983); *United States v. Luddington*, 589 F.2d 236 (5th Cir.1979); *United States v. Hart*, 506 F.2d 887 (5th Cir.), *vacated and remanded*, 422 U.S. 1053, 95 S.Ct. 2674, 45 L.Ed.2d 706 (1975), *reaff'd*, 525 F.2d 1199 (5th Cir.1976) (on remand), *cert. denied*, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226.[1]

■ However, in the absence of probable cause, the search of the vehicle was limited to large areas of the vehicle in which an illegal alien could have been hidden within the vehicle. *United States v. Alvarez-Gonzalez*, 561 F.2d 620, 621 (5th Cir.1977); *see also United States v. Whitmire*, 595 F.2d 1303, 1315 n. 32 (5th Cir.1979); *United States v. Robinson*, 567 F.2d 637 (5th Cir.1978). To allow the Government to rummage through a person's personal luggage while stopped on a desolate stretch of interstate highway on the mere chance that contraband will be discovered, simply because that person is driving on an interstate highway which runs parallel to this Nation's international border, makes a mockery of the liberty interests and property rights this Court is sworn to defend and insure.

This Court is additionally aware that the Government relies solely upon the fact that the Sierra Blanca Border Patrol Checkpoint is the functional equivalent of the border. From this the Government enigmatically extrapolates from speculative dicta in several opinions that the Border Patrol has unbridled discretion to search any person and any vehicle without any of the constraints normally imposed upon federal officers by this Country's Constitution. After examining the many cases that have been decided in this area of constitutional law, this Court must disagree.

In examining the various cases which have dealt with the scope of searches by Border Patrol agents at permanent checkpoints, this Court finds that such searches are factually limited to searches of large areas within a vehicle where an illegal alien could hide, searches based upon consent, or searches based upon probable cause discovered once the vehicle was validly stopped and its large areas searched. See *United States v. Dreyfus de Campos*, 698 F.2d 227 (5th Cir.1983), *cert. denied*, — U.S. —, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (search of luggage when Defendant consentually admitted immigration papers were in luggage); *United States v. Richards*, 598 F.2d 463 (5th Cir.1979) (independent probable cause existed to justify search); *United States v. Martinez*, 597 F.2d 509 (5th Cir. 1979) (marijuana seen in plain view when trunk opened); *United States v. Warren*, 594 F.2d 1046 (5th Cir.1979) (consentual search of luggage); *United States v. Garcia*, 592 F.2d 259 (5th Cir.1979) (smell of marijuana); *United States v. Luddington, et al.*, 589 F.2d 236 (5th Cir.1979), *cert. denied*, 441 U.S. 936, 99 S.Ct. 2061, 60 L.Ed.2d 666 (contraband seen when trunk opened); *United States v. Martinez*, 588 F.2d 495 (5th Cir.1979) (smell of marijuana); *United States v. Bender*, 588 F.2d 200 (5th Cir.1979) (smell of marijuana); *United States v. Woody*, 567 F.2d 1353 (5th Cir. 1978), *cert. denied*, 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (smell of marijuana); *United States v. Reyna*, 563 F.2d 1169 (5th Cir.1977), *cert. denied*, 439 U.S. 871, 99

---

1. Section 1357(a)(3) of Title 8 of the United States Code states that any Border Patrol agent/immigration officer shall have the power without warrant:

within a reasonable distance from any external boundary of the United States, *to board and search for aliens,* any vessel or vehicle ... *for the purpose of patrolling the border to*

*prevent the illegal entry of aliens into the United States.* [emphasis added]

As such, Congress has not granted to the Border Patrol unbridled discretion to thoroughly search any vehicle passing through a permanent Border Patrol checkpoint. The legislative intent is clearly shown that Border Patrol agents are in search of illegal aliens entering this Country.

S.Ct. 203, 58 L.Ed.2d 183 (smell of marijuana); *United States v. Gutierrez,* 560 F.2d 195 (5th Cir.1977) (smell of marijuana); *United States v. Legeza,* 559 F.2d 441 (5th Cir.1977) (smell of marijuana); *United States v. Vale,* 558 F.2d 237 (5th Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 74 L.Ed.2d 759 (smell of marijuana); *United States v. Wilson,* 553 F.2d 896 (5th Cir. 1977) (compartment large enough to hold several illegal aliens discovered in plain view, marijuana found in compartment, smell of marijuana); *United States v. Reyna,* 548 F.2d 1154 (5th Cir.1977) (marijuana in plain view); *United States v. Garza,* 547 F.2d 1234 (5th Cir.1977) (smell of marijuana); *United States v. Leal,* 547 F.2d 1222 (5th Cir.1977) (smell of marijuana); *United States v. Duncan,* 547 F.2d 903 (5th Cir. 1977) (smell of marijuana); *United States v. Faulkner,* 547 F.2d 870 (5th Cir.1977) (marijuana seeds in plain view); *United States v. Alderete,* 546 F.2d 68 (5th Cir. 1977) (smell of marijuana); *United States v. Macias,* 546 F.2d 58 (5th Cir.1977) (defendant fled from checkpoint, spare tire sitting in rear seat on top of marijuana); *United States v. Bazan-Molina,* 544 F.2d 193 (5th Cir.1976) (smell of marijuana); *United States v. McCrary,* 543 F.2d 554 (5th Cir.1976) (smell of marijuana); *United States v. Medina,* 543 F.2d 553 (5th Cir. 1976), *cert. denied,* 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 563 (smell of marijuana); *United States v. Diaz,* 541 F.2d 1165 (5th Cir.1976) (smell of marijuana); *United States v. Vallejo,* 541 F.2d 1164 (5th Cir. 1976) (smell of marijuana); *United States v. Hart,* 506 F.2d 887 (5th Cir.), *vacated and remanded,* 422 U.S. 1053, 95 S.Ct. 2647, 45 L.Ed.2d 706 (1975), *reaff'd,* 525 F.2d 1199 (5th Cir.1976) (on remand), *cert. denied,* 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (view of trunk revealed smell of marijuana—"We do not purport to decide here any more than the case at hand involving a [8 U.S.C.] § 1357 search for aliens.").

This Court must reiterate that it does not require nor demand that a Border Patrol agent possess probable cause or a reasonable suspicion based upon articuable facts to stop and search a vehicle which passes through a permanent checkpoint. This Court merely limits the *scope* of that unfettered search, in the absence of probable cause, a valid search warrant, or consent, to areas where an illegal alien could reasonably be believed to be hidden. *See United States v. Alvarez-Gonzalez, supra,* 561 F.2d at 621; *United States v. Whitmire, supra,* 595 F.2d at 1315, N. 32; *United States v. Robinson, supra,* 567 F.2d at 637.

## CONCLUSION

Based upon the facts of this cause as recited above within these Findings and the controlling legal authority examined in these Findings, this Court sets forth the following guidelines so that the overworked and under-paid Border Patrol agents who so diligently perform their thankless tasks better understand the constitutional rights they are sworn to defend.

As such, a Border Patrol agent, who is conducting routine immigration checks of motorists passing through a permanent Border Patrol checkpoint may validly stop any vehicle for any reason. That Border Patrol agent may then ask the vehicle's occupants their respective national citizenship and determine their legal status within this Country. That same Border Patrol agent may then request the vehicle to proceed to the permanent checkpoint's secondary inspection area. The vehicle may then be searched for illegal aliens hidden in the vehicle. The *scope* of such search, however, is limited to the large areas of the vehicle where an illegal alien could reasonably be hidden. For any of these actions, the Border Patrol agent need *not* have probable cause, nor need he have a reasonable suspicion based upon articuable facts. The Border Patrol agent is only limited in his actions by the normal constitution constraints of reason.

However, to proceed further in searching the vehicle, the Border Patrol agent must have either probable cause to search the vehicle, a valid search warrant, or the con-

sent of the vehicle's occupants to search the vehicle. This same restriction applies to a vehicle's occupant's personal luggage.

Having found that the Border Patrol agents exceeded the scope of their search in this cause, all evidence obtained in that search, one .380 Llama pistol and an undetermined amount of cash, are suppressed in Defendant's prosecution for violating the weapons laws of this Country.