UNITED STATES of America

v.

**Eduardo Jesus LONGORIA and
Jose Maria Longoria.**

**CR. No. M–95–164.**

United States District Court,
S.D. Texas,
Corpus Christi Division.

Nov. 15, 1995.

Laurie R. Hamlett, Assistant U.S. Attorney, McAllen, Texas, for plaintiff.

Roberto J. Yzaguirre, Yzaguirre & Chapa, McAllen, Texas, for defendant.

### ORDER GRANTING MOTION TO SUPPRESS

JACK, District Judge.

On September 12, 1995, a Federal Grand Jury indicted Eduardo Jesus Longoria and Jose Maria Longoria (the "Defendants") with the following crimes: (1) conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; (2) possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and Title 18, U.S.C., Section 2; and (3) using and carrying a firearm during a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)–(2).

On November 6, 1995, the Court heard evidence on a Motion to Suppress by Defendants against Plaintiff United States of America. After a full hearing, the Court orally granted the Motion to Suppress. The Court now enters its written order GRANTING Defendants' Motion to Suppress.

### I. Facts

At approximately 8:00 a.m. on August 28, 1995, United States Border Patrol agent Paul Hornaday ("Hornaday") observed a pick-up truck leaving the Longoria ranch near La Joya, Texas—approximately one mile north of the Rio Grande River. The truck was traveling northward from the Rio Grande River toward Military Highway.

The agent followed the truck onto Expressway 83 and observed the truck go a short distance and then turn right onto Farm to Market Road 2221. Hornaday continued to follow the truck for a short distance and

watched it turn off Farm to Market Road 2221 onto farmland—approximately four miles from Mexico's border.

When the Border Patrol agent stopped the vehicle, the driver, Defendant Eduardo Jesus Longoria, and passenger, Jose Maria Longoria, got out of the truck and walked toward Agent Hornaday. Without a warrant or consent, Hornaday searched the pick-up truck driven by Defendants. The agent located and seized from the vehicle a substance claimed by the United States to be marijuana and a .38 Colt revolver.

Defendants move to suppress evidence obtained by agent Hornaday claiming that his search of their vehicle was illegal and unconstitutional. The United States maintains that Hornaday conducted a legal search of Defendants' vehicle since (1) the search was the functional equivalent of a border search; and (2) United States Border Patrol agents have the power to conduct a search of any vehicle within a reasonable distance from any external boundary of the United States without a warrant and without probable cause pursuant to 8 U.S.C. § 1357(a)(3).

## II. Discussion

### A. Motion to Suppress Hearing

After the testimony of the government's only witness, agent Hornaday, the Court found his testimony unreliable and not credible. Hornaday stated that he was following the Longorias' vehicle because he was looking for illegal aliens in the truck and that the truck first aroused his suspicion when it exited the Longoria ranch without closing the cattle gate. He admitted, however, that he had no suspicion that the Longorias participated in either the transportation or smuggling of illegal aliens.

Also, he stated that he observed no violation of the law occur when he followed the vehicle. Later in his testimony he surmised that the truck moved briskly through a school zone and he was suspicious of a left

turn after a right turn signal was made. Further, Hornaday testified that he had no suspicion or reason to believe that Defendants' vehicle had made a recent border crossing and that this vehicle was not the type of vehicle usually used for alien smuggling.

In addition, without any indicia of reliability, Hornaday later claimed that he received an anonymous call about illegal drug activities on the Longoria property. He stated that the anonymous caller indicated that a drug run was made when the Longoria's cattle gate was left open. He admitted that this information "might" have been in the back of his mind when he followed and stopped Defendants' vehicle. The Court found Hornaday's statements regarding his reliance on an anonymous call to be particularly disturbing. Hornaday's testimony was similar to a witness that has several alternative and inconsistent theories to explain an action and insists on relating each one to test the merits.

### B. Analysis

■■■ First, the United States contends that agent Hornaday's search was legal on the ground that it was the functional equivalent of a border search. In general, a "routine"[1] search made at the border or its functional equivalent is justified without probable cause or any suspicion to justify the search. *Cardenas*, 9 F.3d at 1147.

The United States Supreme Court first used the term "functional equivalent of the border" in *Almeida–Sanchez v. United States*, 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). In *Almeida–Sanchez*, the Supreme Court struck down a roving border patrol search made without probable cause, but differentiated such roving searches from searches made at permanent checkpoints at the border itself or at its "functional equivalents." 413 U.S. at 272, 93 S.Ct. at 2539.

---

1. The Fifth Circuit recently noted that "[a]lthough the Supreme Court has never determined what makes a border search 'routine,' lower courts have generally classified routine searches as those which do not seriously invade a traveler's privacy." *U.S. v. Cardenas*, 9 F.3d 1139, 1148 n. 3 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994) (citing as an example *United States v. Jackson*, 825 F.2d 853, 857 (5th Cir.1987) (search of vehicle)).

In *Almeida–Sanchez*, the Supreme Court provided two examples of functional equivalents:

> searches at an established station near the border, at a point marking the confluence of two or more roads that extend from the border, might be functional equivalents of border searches. For another example, a search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search.

*Id.* at 273, 93 S.Ct. at 2539. However, the Supreme Court has "not otherwise explain[ed] the meaning of this ... concept, nor has the Court since elaborated its understanding of what types of checkpoints qualify as functionally equivalent to the border. The circuit courts, however, have examined in some detail the notion of functionally equivalent borders." *U.S. v. Jackson,* 825 F.2d 853, 855 (5th Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661, and *cert. denied,* 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988).

■ The Fifth Circuit applies a three-pronged test to determine whether functional equivalency status should be granted to a checkpoint, examining the following factors: (1) the checkpoint must function like a permanent border checkpoint; (2) the ratio between international and domestic traffic passing through the checkpoint in question; and (3) the practical necessity of the substitution of the interior checkpoint for the border in order to monitor international traffic. *United States v. Reyna,* 572 F.2d 515, 517 (5th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978).

After weighing the Fifth Circuit factors, this Court finds that the search conducted by Hornaday was not the functional equivalent of a border search. In particular, there was no showing that the location where agent Hornaday stopped the vehicle functioned as a permanent checkpoint.

■ Further, there was no evidence that this vehicle had made a recent border crossing. An actual border crossing must occur to justify a search at the functional equivalent of the border. *United States v. Melendez–Gonzalez,* 727 F.2d 407, 411 (5th Cir.1984); *Jackson,* 825 F.2d at 859. The importance of a border crossing "stems from the fact that ... [the Fifth Circuit is] reluctant to allow governmental interference with people traveling in our country, even if the vehicle is traveling close to the border." *U.S. v. Inocencio,* 40 F.3d 716, 722 n. 6 (5th Cir.1994).

The Court is very reluctant to adopt the government's view in this case as it would subject all residents within four miles of the United States/Mexico border to those very roving Border Patrol searches condemned in *Almeida–Sanchez*.

■ Second, the United States argues that agent Hornaday's search was legal since Border Patrol agents may conduct a search of any vehicle within a reasonable distance from any external boundary of the United States without a warrant and without probable cause pursuant to 8 U.S.C. § 1357(a)(3).[2] However, the United States Supreme Court limited the authority granted by section 1357(a)(3) in *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In *Brignoni–Ponce,* the Supreme Court held that "[e]xcept at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally" in the United States. *Id.* at 844, 95 S.Ct. at 2582.

Moreover, as in the case of the "functional equivalent" doctrine, the Fifth Circuit indicates that a vital element of the *Brignoni–Ponce* test and important threshold question is whether the agent had reason to believe that the vehicle had come from the border which is absent in this case. *See, U.S. v. Cardona,* 955 F.2d 976, 980 (5th Cir.), *cert.*

---

**2.** 8 U.S.C. § 1357(a)(3) authorizes Border Patrol agents, without a warrant,

within a reasonable distance from any external boundary of the United States, to board and

search for aliens any vessel within the territorial waters of the United States or any railway car, aircraft, conveyance, or vehicle....

*denied,* —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 291 (1992); *U.S. v. Leija,* 735 F.Supp. 701, 705 (N.D.Tex.1990).

Further discussion of the presence or absence of reasonable suspicion on the part of Hornaday under *Brignoni–Ponce* is unnecessary since the Court finds that his testimony was unreliable and not credible.

Accordingly, this Court finds that agent Hornaday's search was not the functional equivalent of a border search and was not a valid search under section 1357(a)(3). Further, the Court finds that Hornaday had no reliable or articulable reasonable suspicion to stop Defendants' vehicle.

### III. Conclusion

For the forgoing reasons, the Court GRANTS Defendants' Motion to Suppress.